In re James Ross **HARTLEY,** Sharon Lee Hartley, Debtors.

The **TOLEDO TRUST COMPANY,** Successor-in-Interest to The Peoples Bank, Carey, Ohio, Plaintiff,

v.

The **PEOPLES BANKING COMPANY,** et al., Defendants.

Bankruptcy No. 81–01855.
Adv. No. 83–0838.

United States Bankruptcy Court, N.D. Ohio, W.D.

March 30, 1984.

Reginald S. Jackson, Jr., Steven R. Smith, Toledo, Ohio, for plaintiff.

William E. Clark, Findlay, Ohio, for The Peoples Banking Co.

Quentin M. Derryberry, II, Wapakoneta, Ohio, trustee/defendant.

Melanie Rovner Cohen, Antonow & Fink, Chicago, Ill., for trustee/defendant.

Russell E. Rakestraw, Findlay, Ohio, for Paul A. Burson.

## MEMORANDUM AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court upon the motions of defendants Paul A. Burson and Quentin M. Derryberry, II to dismiss the complaint of The Toledo Trust Company for a declaratory judgment. Under the circumstances of this case, the Court finds that the motions are not well taken and should be denied.

## FACTUAL BACKGROUND

The well-pled allegations in plaintiff's complaint reveal the following:

1. On December 2, 1980 James Ross Hartley ("Hartley") delivered a sum of money to The Peoples Bank of Carey (the "Carey Bank") for 3,270 shares of stock of the Carey Bank, placing the single certificate received therefore in his name only.

2. In February of 1981, Hartley pledged the 3,270 shares of the Carey Bank obtained in December of 1980 plus 2,730 other shares of stock of the Carey Bank to The Peoples Banking Company of McComb (the "McComb Bank") to secure a loan.

3. In September of 1981 Hartley filed a voluntary petition under Chapter 7 of the Bankruptcy Code and Quentin M. Derryberry, II was appointed trustee of the estate.

4. The Trustee sold the 6000 shares of stock of the Carey Bank to The Toledo Trust Company ("Toledo Trust") for $480,-000.

5. The McComb Bank asserts a first lien on the stock or the proceeds thereof by virtue of Hartley's pledge of the stock to it to secure the loan.

6. The Trustee asserts that the stock is property of the estate free from the claims of the McComb Bank.

7. Paul A. Burson ("Burson") claims an ownership interest in the stock by virtue of an agreement with Hartley and has filed a proof of claim with the Court asserting the same.

8. Toledo Trust and the McComb Bank are defendants in an action initiated in the Common Pleas Court of Wyandot County, Ohio by Burson wherein Burson asserts an ownership interest in the stock in question.

9. The trustee and the McComb Bank are parties to litigation in this Court which concern their respective interests in the stock.

## DISCUSSION

Defendant Burson's motion to dismiss asserts this Court's lack of subject matter

jurisdiction to determine this controversy and, alternatively, asks this Court to abstain from hearing this case. The Trustee, on the other hand, asserts that dismissal is appropriate since this case presents no "actual controversy" within the confines of The Declaratory Judgment Act. The Court rejects both arguments as grounds for dismissal.

■■ First, despite Burson's contention to the contrary, it seems clear that, construing the broad construction given to the jurisdictional grant under 28 U.S.C. § 1471(b), *See Peoples Banking Co. v. Hartley (In re Hartley),* 16 B.R. 777 (Bkrtcy.N.D.Ohio 1982), this case is one "arising in or related to" a case under Title 11. One of the pivotal matters raised in plaintiff's complaint is the question of what interest, if any, defendant Burson has in 6000 shares of stock which the Trustee claims is property of the bankruptcy estate under 11 U.S.C. § 541. As plaintiff correctly points out, if an action involving a non-debtor will effect the debtor's schedules of assets or liabilities filed in the bankruptcy court, the action involving the non-debtor is "related to" the bankruptcy case, and the bankruptcy court has original jurisdiction over the action involving the non-debtor. *Cincinnati Milacron Marketing Co. v. Ramirez (In re Weslo Products Co.),* 19 B.R. 908, 8 B.C.D. 1364 (Bkrtcy.N.D.Ill.1982); *In re Brentano's, Inc.,* 27 B.R. 90, 10 B.C.D. 157 (Bkrtcy.S.D.N.Y.1983). The present action questioning as it does both the Trustee's and non-debtor's interest in nominal estate assets, *a fortiori,* is within the original jurisdiction of the Court.

The Court also rejects Burson's contentions that the Court lacks jurisdiction of this matter in the aftermath of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), that the Court cannot undertake to decide this matter under General Order No. 61, "Emergency Rule for Bankruptcy Procedure" (hereinafter the "interim rule") in the absence of his consent, or that the Court lacks the authority, after *Northern Pipeline,* to render a declaratory judgment.

■ Since *Northern Pipeline,* pursuant to order of the Judicial Counsel of the Sixth Circuit, the district court in the Northern District of Ohio has adopted the interim rule, *supra.* The continuing validity and effectiveness of the rule, which provides for a general order of reference to the bankruptcy judges of this district of "[a]ll cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11" was upheld by the United States Court of Appeals for the Sixth Circuit in *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (1983) and need not be considered further herein. Thus notwithstanding *Northern Pipeline,* this Court maintains continuing derivative jurisdiction over the present matter in the first instance, and the motion to dismiss on this ground is not well taken.

■ Furthermore, it is not necessary to obtain defendant Burson's consent as a prerequisite to jurisdiction. Section (d)(1) of the interim rule provides, with exceptions not herein relevant, that "[t]he bankruptcy judge may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of these cases and proceedings ..." Consent, while relevant to the question of whether the bankruptcy judge can enter orders effective upon entry by the Clerk of the Bankruptcy court or whether, if the matter is a "related proceeding", he need submit findings, conclusions, and a proposed judgment or order to the district judge, *see* sections (d)(2) and (d)(3)(B) of the interim rule, does not govern the question of jurisdiction in the first instance.

■ Last of all, there is no limitation, under section (d)(1) of the interim rule, on the Court's power to render a declaratory judgment. The reservations expressed by the court in *In re Southern Distilleries,* 22 B.R. 234 (Bkrtcy.M.D.Ala.1982), to entry of a declaratory judgment in the light of *Northern Pipeline, supra,* need not be considered by the Court since *White Motor*

*v. Citibank, N.A., supra,* 704 F.2d 254. *In re Tremblay,* 31 B.R. 200 (Bkrtcy.D.Vt. 1983), also relied on by defendant Burson for the contrary proposition, merely recognizes the propriety of abstention in certain circumstances, which will be more fully discussed, *infra.*

The Trustee asserts as grounds for dismissal that there is no dispute between himself and Toledo Trust sufficient to create an actual controversy for this Court's decision. In so arguing, the Trustee is obviously alluding to the provisions of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, which provides in relevant part:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

■■■ The test to be applied in determining the existence of an actual controversy in the context of a declaratory judgment action is "whether the facts alleged, under all the circumstances, show there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a Declaratory Judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). *Accord, Lake Carriers' Association v. MacMullan,* 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972). Furthermore, whether the controversy is of sufficient immediacy and reality to permit a declaratory judgment is a question of degree, to be worked out on a case-by-case basis. *See Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959–960, 22 L.Ed.2d 113, 118 (1969); *Evers v. Dwyer,* 358 U.S. 202, 203, 79 S.Ct. 178, 179, 3 L.Ed.2d 222, 224 (1958).

In the present case, the Trustee asserts there is no actual dispute between himself and Toledo Trust. The trustee argues that the only dispute is between himself and the McComb Bank over the proceeds of the sale of the 6000 shares of stock sold to Toledo Trust. Thus, the Trustee contends, since Toledo Trust only claims the stock and not the proceeds thereof, it has no interest to protect vis-a-vis the Trustee and no claim cognizable under the Declaratory Judgment Act. Toledo Trust counters that, instead of being independent, there is a substantial entwinement of the various claims concerning the stock and the proceeds thereof. In particular, Toledo Trust points to defendant Burson's claim of ownership to one half of the stock or the proceeds thereof. If Burson succeeds against the Trustee on a claim of ownership of the stock, Toledo Trust asserts its readiness to pursue the Trustee for return of the monies paid to him for that portion of the stock. Furthermore, Toledo Trust contends, the McComb Bank has already filed a cross-claim against it in the Wyandot County action for indemnification in the event Burson succeeds on his claim against the stock.

■■ In the opinion of the Court, the facts alleged by plaintiff Toledo Trust show convincingly that there is a substantial controversy between adverse parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment. The facts which plaintiff asserts have created its possible liability have already occurred, thereby subjecting plaintiff to a concrete specific threat of some future harm. Even though the circumstances indicate that plaintiff's liability may be contingent, this is no bar to a determination that an actual controversy exists. *See Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d* § 2757 at 586 (1983). Despite the fact that the Trustee has not asserted a coercive remedy against the plaintiff, then, a cognizable claim under the Declaratory Judgment Act has been shown.

■■■ The finding of a justifiable controversy leaves unanswered the question of the propriety granting a declaratory judgment under the circumstances of this case. The Declaratory Judgment Act, 28 U.S.C. § 2201, does not confer any absolute rights on plaintiffs. It merely is an enabling statute conferring discretionary jurisdiction on the federal courts. *Public Service Com-*

mission v. Wycoff Co., 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952); *National Emblem Insurance Co. v. Washington*, 482 F.2d 1346 (6th Cir.1973).

The discretion of the trial court to entertain a declaratory judgment action is not absolute, however. "In the exercise of their sound discretion to entertain declaratory actions the district courts may not decline on the basis of whim or personal disinclination...." *Hollis v. Itawamba County Loans*, 657 F.2d 746, 750 (5th Cir. 1981). The discretion that resides in the courts is judicial discretion and must find its basis in good reason. *E.W. Bliss Co. v. Cold Metal Process Co.*, 102 F.2d 105, 109 (6th Cir.1939).

Defendant Burson argues that the Court should abstain from hearing the present case in deference to the pending state action he initiated in Wyandot County, Ohio. Although he acknowledges the failure to join the Trustee in that action, it is asserted that the present cause is an unnecessary usurpation of the state court's power to decide that case and an attempt at forum shopping by plaintiff. Plaintiff emphasizes at once the propriety and importance of an expeditious resolution of the issues involved to the administration of this bankruptcy case. Furthermore, plaintiff points out that defendant Burson has already impliedly consented to resolution of this matter in bankruptcy court by virtue of having filed his proof of claim wherein he asserts an ownership interest in the stock.

The pendency of the Wyandot County action is not an absolute bar to this Court's determination of this case. A declaratory judgment may be rendered notwithstanding the existence of another adequate remedy. *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). "The test is whether or not the other remedy is more effective or efficient, and hence whether the declaratory action would serve a useful purpose. Where another remedy would be a more effective or appropriate remedy, the court may properly decline to assume jurisdiction." *MacMillan-Bloedel, Inc. v. Firemen's Insurance Co.*, 558 F.Supp. 596, 599 (S.D.Ala.1983);

*Accord, Parker v. Local 413, International Brotherhood of Teamsters*, 501 F.Supp. 440 (S.D.Ohio 1980), *aff'd*, 657 F.2d 269 (6th Cir.1981).

A similar analysis generally applies in considering the pendency of a state court action, *see generally, Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d* § 2858 (1983). In *New York Cent. R.R. Co. v. Colonial Stores, Inc.*, 332 F.Supp. 531 (S.D.Ohio 1971), the court identified some of the controlling precedent for this circuit:

> The principles which the Court believes should govern the determination of this case were first announced in *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). In that case the Court determined that:
>
> > Although the District court had jurisdiction of the suit under the Federal Declaratory Judgment Act, * * * it was under no compulsion to exercise that jurisdiction. The petitioner's motion to dismiss the bill was addressed to the discretion of the court, * * * The motion rested upon the claim that since another proceeding was pending in a state court in which all the matters in controversy between the parties could be fully adjudicated, a declaratory judgment in the federal court was unwarranted. The correctness of this claim was certainly relevant in determining whether the District Court should assume jurisdiction and proceed to determine the rights of the parties. Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state litigation should be avoided.
> >
> > Where a district court is presented with a claim such as made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable sub-

stantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all the parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc. At pp. 494–495, 62 S.Ct. at p. 1175.

This view was reaffirmed recently in *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 126, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). It has been adopted by our Circuit Court. See, *Utilities Insurance Company v. Ledford*, 255 F.2d 123, 124 (6th Cir.1958). 332 F.Supp. at 533.

■ Considering the circumstances of this case, the Court concludes that the pending state court action does not present a more effective and efficient forum for the resolution of the matters raised in plaintiff's complaint, that issuance of a declaratory judgment would serve a useful purpose, and that compelling reasons exist for permitting the plaintiff to continue herein.

The critical issue posed in the present litigation is what interest, if any, defendant Burson maintains in the stock or its proceeds. In the Wyandot County action, in contrast, Toledo Trust's predecessor, its president, and the McComb Bank are defendants against a claim of a willful, malicious, and fraudulent conspiracy to deprive Burson of his rights in the stock or proceeds thereof. The Wyandot County action thus sounds more in tort for damages than an action to recover whatever ownership interest he may have had in the stock or the proceeds thereof. It appears, therefore, that while there may be common questions of fact between the cases, the nature of the causes are different. It would not appear therefore, that litigation of the present action would create any undue interference with the state court action.

Furthermore, additional questions are raised and parties joined herein, which claims and parties are not a part of the state court action: the question of the trustee's rights (not a party in state court) in the stock, nominally an asset of the bankruptcy case, are not raised therein; the nature of the McComb Bank's claim, secured or unsecured, is not raised; and the rights of the parties, *inter se*, resulting from their ownership rights and the sale of the stock, are not raised in the state court action. The present case, then, representing a more comprehensive solution to the litigation, the federal court should proceed regardless of the pendency of the state action. See, e.g. *Peabody Coal Co. v. Erwin*, 453 F.2d 398 (6th Cir.1971); *American States Ins. Co. v. D'Atri*, 375 F.2d 761 (6th Cir.1967).

In addition to the differing natures of the cases and claims raised in the two cases, it does not appear that this Court would handle the matter less efficiently. Defendant Burson earlier raised the question of this Court's jurisdiction to render a final judgment in this matter, apparently alluding to the fact that under section (d)(3)(B) of the interim rule, *supra*, "the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge" in related proceedings.

It does not appear, however, that this matter is necessarily a related proceeding. Under section (d)(3) of the interim rule, "[r]elated proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court." Related proceedings under this section do not include "allowance of and objection to claims against the estate. . . ." To a large degree, to the extent this declaratory judgment action asks the Court to determine the parties' rights in the stock, which is nominally estate property, it asks for a determination of the allowability of claims against the estate. Thus, to that extent, the Court may enter a judgment effective upon entry by the Clerk under section (d)(2) of the interim rule.

Finally, the most compelling reason for rendering relief in this case may be the importance of a resolution of this conflict to the administration of the bankruptcy case. The stock or the proceeds thereof may indeed, as plaintiff alleges, be one of the largest assets of this estate. The Trustee has exercised his authority to sell the stock and the competing claims to the proceeds should be expeditiously determined. It seems appropriate that this Court not decline to determine the issues that may delay any ultimate distribution to creditors.

For all the foregoing reasons, it is hereby,

ORDERED that the motions of Paul A. Burson and Quentin M. Derryberry, II to dismiss the complaint be, and hereby are, overruled.