### In re OTERO MILLS, INC.

**OTERO MILLS, INC., Plaintiff/Appellee,**

**v.**

### SECURITY BANK & TRUST,
**Defendant/Appellant.**

**Bankruptcy No. 82–00217ML.**
**Civ. No. 82–772–JB.**

United States District Court,
D. New Mexico.

Dec. 22, 1982.

Jennie Deden Behles, Albuquerque, N.M., for plaintiff/appellee.

Sutin, Thayer & Browne, Norman S. Thayer, Gail Gottlieb, Albuquerque, N.M., for defendant/appellant.

## MEMORANDUM OPINION

BURCIAGA, District Judge.

THIS APPEAL from the Bankruptcy Court, 21 B.R. 645, 21 B.R. 777, for the District of New Mexico is taken by Security Bank and Trust [Bank] from an order of July 1, 1982. That order permanently enjoined the Bank from executing or otherwise collecting upon its state-court judgment against Charles Dugan. Dugan is the president of the bankrupt corporation, Otero Mills, Inc. [Otero], and a guarantor of two loans made by the Bank to Otero. (Dugan has not filed for bankruptcy.) Appeal is also taken from an order of July 14, 1982, denying a rehearing on the permanent injunction issue.

Otero executed two promissory notes in favor of the Bank. The first, executed in April, 1979, is in the amount of $500,000. The second, executed in September, 1979, is in the amount of $150,000. These notes are secured by property owned by Otero. In addition, each note is accompanied by a guaranty agreement signed by Dugan in his individual capacity.

In March, 1982, Otero filed for bankruptcy. That month, Otero failed to make payment of the installments due on the notes. In April, the bank brought suit in state court against Dugan as guarantor. On June 4, the bankruptcy court entered a preliminary injunction against the Bank, prohibiting it from enforcing its state-court judgment, but allowing the Bank to domesticate its judgment in other states where Dugan owned property. The preliminary injunction was made permanent on July 1, 1982.

Following the U.S. Supreme Court decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (U.S.1982), the Bank moved for a rehearing. This motion was denied. The Bank then petitioned

for a writ of mandamus against Judge McFeeley, arguing that the *Northern Pipeline* decision deprived the bankruptcy court of jurisdiction. The writ of mandamus was denied on August 17. *Security Bank & Trust v. Honorable Mark B. McFeeley,* CIV82–758M (Aug. 17, 1982). The order denying mandamus preserved all jurisdictional questions for appeal.

This appeal from the permanent injunction and the denial of rehearing is taken pursuant to 28 U.S.C.A. § 1334 (Supp.1982).

The issues presented for appeal are:

1. Whether a bankruptcy court has power under 11 U.S.C.A. § 105(a) (1979) to enjoin parties from proceeding in state court against third parties where the bankruptcy court finds that failure to enjoin would affect the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through those third parties?

2. Whether the bankruptcy judge abused his discretion in granting a permanent injunction on the facts of this case?

3. Whether the U.S. Supreme Court ruling in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (U.S.1982), deprived the bankruptcy court of jurisdiction to enter an injunction against the Bank?

I. *Jurisdiction of the Bankruptcy Court to Enjoin Parties from Proceeding in State Court against Persons other than the Bankrupt.*

Section 105(a) of Title 11 provides: "The bankruptcy court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.A. § 105(a) (1979). It has been repeatedly held that this provision empowers the bankruptcy court to enjoin parties from proceeding in state court against parties other than the bankrupt. *In re Landmark Air Fund II,* 19 B.R. 556 (Bkrtcy. N.D.Ohio 1982); *In re Lamar Estates, Inc.,* 5 B.R. 328 (Bkrtcy.E.D.N.Y.1980); *see also* A. Herzog & L. King, 2 *Collier's Bankruptcy Practice Guide* ¶ 39.03[4] (1st ed. 1981).

Appellant cites only one case decided under the 1978 Bankruptcy Code which found that the bankruptcy court lacked the power to enjoin parties from pursuing actions against non-bankrupts in state court. *In re Aboussie Brothers Construction Co.,* 8 B.R. 302 (D.C.E.D.Mo.1981). In *Aboussie,* the court did not address § 105(a), but relied on cases decided under the old Bankruptcy Act to hold that there was no jurisdiction to enjoin parties from pursuing actions which did not involve the bankrupt directly. The pre-1978 Act confined jurisdiction to "the debtor and his property, wherever located." Act of June 22, 1938, ch. 575, § 1, 52 Stat. 906 (1938). Under the new Bankruptcy Code, the jurisdictional statute provides that the bankruptcy court shall have jurisdiction "of all civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C.A. § 1471 (Supp. 1982). This broader jurisdictional statute, combined with § 105(a), grants the bankruptcy court power to enjoin parties from proceeding in state court against non-bankrupts where the state proceeding is related to a case arising under Title 11.

Given that a bankruptcy court can have jurisdiction in some circumstances to enjoin parties from proceeding against third parties in state court, the next inquiry must be into what circumstances constitute a sufficient relationship to the bankruptcy case to give rise to jurisdiction. The Court below enjoined enforcement of the state-court judgment against Dugan because the bankrupt asserted that Dugan was going to contribute personal assets to the bankrupt in order to effect the reorganization plan. The court stated: "To so enjoin a creditor's action against a third party, the court must find that failure to enjoin would effect [sic] the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through that third party." Appellant argues that this is too broad a standard and that "an injunction should be issued only where necessary to preserve the bankruptcy court's ability to administer the estate or to preserve the debtor's ability to reorganize."

From the outset, it should be made clear that what is at issue is a jurisdictional standard, not the test for whether the injunction should issue on the facts of the case. Appellant confuses these two issues. The Bankruptcy Court's order does not state that an injunction should necessarily issue whenever a state court proceeding will affect the bankruptcy estate and adversely influence the debtor. It provides only that the threshold jurisdictional requirements are met where these conditions exist. This jurisdictional statement is an elaboration on the two statutory provisions which empower a bankruptcy court to issue injunctions in appropriate circumstances: the provision granting bankruptcy courts jurisdiction over civil proceedings "related to cases under title 11," 28 U.S.C.A. § 1471 (Supp. 1982), and the provision granting the bankruptcy court power to issue such orders as are "necessary and appropriate to carry out the provisions [of Title 11]." 11 U.S.C.A. § 105(a) (1979).

The cases cited by appellant for the proposition that the standard applied is too broad, do not address the jurisdictional issue, but rather the issue of whether the injunction should issue on the facts of the particular case. For example, in *In re Lamar Estates, Inc., supra,* a case relied upon by appellant, the court states, "It is clear that with the bankruptcy court's expanded power and jurisdiction, this court has the power to enjoin enforcement of the state court judgment against the guarantors." *Id.* 5 B.R. at 331. It was only upon the facts of the case that the court in *Lamar Estates* refused to grant the injunction.

■ In the case at bar, the bankruptcy court had jurisdiction to consider the issuance of an injunction. The suit brought by the Bank against Dugan is related to the Title 11 proceeding in that Dugan is the president and a shareholder of the bankrupt corporation, and in that the debtor asserted that its reorganization plan would require contribution of assets by Dugan to the debtor. The standard applied by the bankruptcy court is an appropriate one for determining whether the injunction is "necessary

and appropriate" under § 105(a) and "related to the bankruptcy proceeding" under 28 U.S.C.A. § 1471 (Supp.1982).

II. *The Propriety of the Injunction on the Facts of this Case.*

■ On appeal, review of a grant or denial of an injunction is limited to whether the trial court abused its discretion. *Goldammer v. Fay,* 326 F.2d 268 (10th Cir. 1964). The injunction issued below is in the nature of a temporary stay of enforcement against Dugan. *See In re Lamar Estates, Inc., supra.* The court appropriately applied the traditional preliminary injunction test in determining whether to grant the stay of enforcement. *Id.* The court stated: "In order for the Court to enjoin a creditor's action against a codebtor or guarantor, the debtor must show: 1) irreparable harm to the bankruptcy estate if the injunction does not issue; 2) strong likelihood of success on the merits; and 3) no harm or minimal harm to the other party or parties." The bankruptcy court, relying on *In re Lamar Estates, Inc., supra,* and *Landmark Air Fund II, supra,* defined "likelihood of success on the merits" as the probability of a successful plan of reorganization. Although the court below did not directly analyze the fourth factor of the preliminary injunction test, the public interest, *see Lundgrin v. Claytor,* 619 F.2d 61 (10th Cir. 1980), in the bankruptcy setting, the public interest lies in promoting successful reorganization. This was of paramount concern to the court below.

Appellant put on no evidence disputing Otero's claim that irreparable harm would result if enforcement of the state judgment was not enjoined. In addition, it presented no evidence that it would be harmed by the issuance of the injunction. The court below found that to allow the Bank to proceed against Dugan's property would impair Otero's ability to file its reorganization plan. In addition, the court found that the Bank had stipulated in another proceeding related to the Otero bankruptcy that there was adequate protection on the notes until at least August 26, 1982. The court below

narrowly framed the injunction, allowing the Bank to domesticate its judgment in other states. The court also provided that it would consider an application by the Bank to lift the injunction should the Bank feel it was no longer adequately protected after August 26, 1982. In view of the bankruptcy policy of encouraging reorganization, *see In re Heatron, Inc.,* 6 B.R. 493 (Bkrtcy.W.D.Mo.1980), and in view of the measures taken to protect the Bank, the bankruptcy court did not abuse its discretion in issuing the injunction.

Chapter 11 proceedings are equitable in nature. *In re Ware Spaces, Inc.,* 5 B.R. 204 (Bkrtcy.D.Hawaii 1980). At the beginning of the reorganization process, a court must work with less evidence than might be desirable and should resolve issues in favor of reorganization. *In re Heatron, Inc., supra,* 6 B.R. at 496. Appellant argues that successful reorganization by Otero is speculative. Although reorganization by any bankrupt may be speculative early in the proceedings, appellant is protected in that if a reorganization plan is not approved, it may apply to the bankruptcy court to lift the injunction.

As a second argument that the injunction inappropriate, appellant argues that the scope of the injunction is too broad. The basis of this argument is that the injunction covers execution on all property owned by Dugan, regardless of whether that property is a part of the reorganization plan. At the time the injunction was issued, the reorganization plan had not yet been filed. It was not error for the bankruptcy judge to issue the injunction barring enforcement against any of Dugan's property. In addition, one aspect to be considered in enjoining enforcement of a judgment against a co-debtor or guarantor is the likelihood that such enforcement will affect reorganization by detrimentally pressuring the bankrupt. *First Federal Savings & Loan Association of Little Rock v. Pettit,* 510 F.Supp. 226 (E.D.Ark.1981). In the case at bar, Dugan is president and shareholder of the bankrupt corporation. Such pressure could result from enforcement against Dugan. The appellant should apply to the bankruptcy court for a narrowing of the injunction in light of the filed reorganization plan if it wishes to pursue its argument on the scope of the injunction. The court below has not ruled on the issue of the scope of injunction in light of the proposed reorganization plan. The proposed reorganization plan is not a part of the record below and comes before this court only as an exhibit to appellant's brief. A determination of whether enforcement against Dugan's assets which are not mentioned in the reorganization plan would harm the debtor is properly a question for the court below.

### III. *Jurisdiction of Bankruptcy Courts after Northern Pipeline*

■ Appellant raises one final argument: that the bankruptcy court was deprived of jurisdiction to issue an injunction against the enforcement of the judgment against Dugan by the U.S. Supreme Court decision in *Northern Pipeline Construction Co. v. Marathon Oil Co., supra.* That case held that Congress acted unconstitutionally in vesting broad jurisdictional powers in the bankruptcy courts since the bankruptcy courts are not Article III courts. Appellant's argument, based on a strict parsing of the language used by the Court, urges the view that the *judgment* was stayed but that the effect of the *decision* was not. Under appellant's argument, the stay was effective between the parties and allowed the bankruptcy courts to continue to hear those matters which Congress could have constitutionally relegated to a non-Article III court.

The purpose of the stay, as articulated by the Court, was to give Congress time to respond to the decision by reconstituting bankruptcy courts in accordance with the decision. This purpose makes it clear that the intent of the Court was to leave the bankruptcy system intact until Oct. 4, 1982 (and subsequently, Dec. 24, 1982, *see Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982), (order extending stay)). The Court stated:

It is ... plain that retroactive application would not further the operation of our holding, and would surely visit substantial injustice and hardship upon those litigants who relied upon the Act's vesting of jurisdiction in the bankruptcy courts. We hold, therefore, that our decision shall apply only prospectively.

The judgment of the District Court is affirmed. However, we stay our judgment until October 4, 1982. This limited stay will afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws.

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (U.S.1982). This section, taken as a whole, indicates that the Court contemplated the continued operation of the bankruptcy courts during the pendency of the stay.

The Court specifically ruled that the unconstitutional grant of jurisdiction by Congress could not be severed from the constitutional grant. *Id.* at ——, 102 S.Ct. at 2880 n. 40. Appellant's argument that such a severance is meant to have effect during the pendency of the stay contravenes the clear statement of the Court. Had the Court intended for the bankruptcy courts to operate only with a limited jurisdiction during the pendency of the stay, the opinion would have had to have been much more explicit with regard to the extent of the bankruptcy courts' powers during the stay.

Appellant relies upon *Buckley v. Valeo,* 424 U.S. 1, 143, 96 S.Ct. 612, 693, 46 L.Ed.2d 659 (1976), an opinion cited by the Court as authority for the suspension of the effect of a decision. In *Buckley,* the Court ruled that the Federal Election Commission was unconstitutionally constituted since its members were appointed by Congress rather than by the President. The Court stayed the judgment for thirty days to allow Congress to act. Appellants read *Buckley* as allowing the Commission to exercise only those powers which could be constitutionally delegated to Congressional appointees during the pendency of the stay. The purpose of the stay was to allow uninterrupted *enforcement* of the constitutional provisions of the Federal Election Campaign Act of 1971 (In *Buckley,* the Court invalidated the provisions of the Act relating to expenditures on first amendment grounds.). The limited stay of the judgment did not allow the Commission to enforce the provisions of the Act which violated first amendment rights, but did allow the unconstitutionally appointed Commission to enforce the other provisions of the Act during the pendency of the stay despite the fact that the members of the Commission were appointed by Congress in violation of Article II, § 2, cl. 2 of the Constitution. It was precisely the enforcement powers of the Commission which the Court found were unconstitutionally delegated to Congressional appointees.

The district court must apply the decision of the Supreme Court. *Patterson v. Brown,* 393 F.2d 733 (10th Cir.1968). This court is without power to contravene the clear intent of the Supreme Court that bankruptcy courts continue to operate as before during the pendency of the stay.

Wherefore,

The opinion below is AFFIRMED.