**In the Matter of RUSTIC MANUFACTURING, INC., Debtor.**

**RUSTIC MANUFACTURING, INC., Plaintiff,**

v.

**MARINE BANK DANE COUNTY, f/k/a Security Marine Bank of Madison, Defendant.**

**Adv. No. 84–0263–11.**

United States Bankruptcy Court, W.D. Wisconsin.

June 18, 1985.

---

Denis P. Bartell, Ross & Stevens, S.C., Madison, Wis., for plaintiff.

Patricia M. Gibeault, Brynelson, Herrick, Gehl & Bucaida, Madison, Wis., for defendant.

## MEMORANDUM DECISION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

On August 3, 1984, Rustic Manufacturing, Inc. ("Rustic") filed for bankruptcy under chapter 11. Rustic's principal secured creditor is Marine Bank ("Marine") which is owed approximately $425,000. Marine holds a lien on a variety of Rustic's assets as security for the obligation. In addition to that collateral, Marine has personal guarantees from each of the four principals of the debtor corporation who are the sole shareholders, officers and directors of Rustic ("guarantors"). The guarantors are also the principal management employees of Rustic, performing all or most of the day to day sales, development, personnel, record keeping and general management functions of that business.

On August 15, 1984, this court entered an order granting Rustic leave to use Marine's cash collateral. The court established conditions of such use, the fulfillment of which conditions was deemed adequate protection for Marine's interest in the collateral.

On September 5, 1984, Marine commenced a personal action against the guarantors in Dane County Circuit Court which is currently pending. Rustic seeks an injunction staying Marine's state court suit. Marine questions both the jurisdiction of the bankruptcy court over this controversy and the merits of Rustic's claim.

28 U.S.C. § 1334(b) provides;

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.[1]

The jurisdiction of bankruptcy courts originates from chapter 6 of title 28 of the U.S.Code, which designates bankruptcy judges as units of the district court, 28 U.S.C. § 151, and refers jurisdiction from the district courts to the bankruptcy courts, 28 U.S.C. § 157. Section 157(a) states, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Jurisdiction of the district court for the Western District of Wisconsin is exercised under an order of general reference to the bankruptcy court dated July 12, 1984, which provides:

Pursuant to the provisions of 28 U.S.C. § 157, any or all cases under Title 11 and any or all proceedings arising under Title

---

1. The language of subsection (b) is identical to that contained in its predecessor statute 28 U.S.C. § 1471, and all cases cited by the parties interpreted section 1471.

11, or arising in or related to a case under Title 11, shall be referred to the bankruptcy judges for this district. . . .

Two views of the scope of the jurisdiction conferred by 28 U.S.C. § 1334 have been articulated. In *In Re United Dept. Stores, Inc.,* 39 B.R. 54 (Bankr.S.D.N.Y.1984), the court held "[f]or an action to be within this 'related to' jurisdiction it must have a significant connection to the pending bankruptcy case." In that case the debtor's chairman of the board, who was also a stockholder, sought an injunction from the bankruptcy court to stay an action on his personal guarantee of an obligation of the debtor. In holding that it lacked jurisdiction the court explained;

> The connection of the Florida action to the UDS reorganization is at best tenuous. The Florida action is between non-debtors and does not involve bankruptcy issues. Outlet seeks no recovery from the estate, and the debtor has no interest in any recovery that may be obtained. Further, it has not been shown that the continuation of the Florida action will unduly interfere with the administration of the UDS estate.

39 B.R. at 55.

The other view is articulated in *In Re Larmar Estates, Inc.,* 5 B.R. 328, 6 B:C.D. 711 (Bankr.E.D.N.Y.1980). There a preliminary injunction was sought against suits to collect from the officers of a chapter 11 debtor on their guarantees and the court stated;

> 11 U.S.C. section 105(a) empowers the bankruptcy court to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.' It is clear that with the bankruptcy court's expanded power and jurisdiction, this court has the power to enjoin enforcement of the state court judgment against the guarantors.

5 B.R. at 330–331 (footnotes omitted). These two views of the court's jurisdiction are not as far apart as may first appear. Each is dependent upon the extent of the impact on the debtor. Where the impact is sufficient to warrant the issuance of an injunction under the standards discussed below, it would seem that even a court applying the *United Dept. Stores* analysis would be compelled to find that the issues would be sufficiently "related to" the bankruptcy case to support the bankruptcy court's jurisdiction.

■ I am satisfied that where it can be shown that the commencement or continuation of a suit against a principal officer or employee of a debtor on the guaranty of a debt owed principally or jointly by the debtor would have a significant impact on the debtor's chances to reorganize by, *inter alia* depriving the debtor of the employee's services, depriving the debtor of the employee's loyalty, or being undertaken for the purposes of harassment to attempt to obtain favored treatment in a plan of reorganization, that a sufficient relation to the bankruptcy case would exist to secure jurisdiction under 28 U.S.C. § 1334(b). This is consistent with my statement in *In Re Doughtie,* 39 B.R. 950 (Bankr.W.D.Wis. 1984), "[i]f an act against a third party served as an indirect means of collecting a claim against the debtor, a bankruptcy court may exercise its powers to enjoin such an act." 39 B.R. at 952. Various courts have articulated similar standards. *See, e.g., In Re Otero Mills, Inc.,* 25 B.R. 1018, 7 C.B.C.2d 1017 (D.N.M.1982); *Mahaffey v. E–C–P of Arizona, Inc.,* 40 B.R. 469, 12 B.C.D. 164 (Bankr.D.Colo.1984); *In Re Datair Systems Corp.,* 37 B.R. 690, 11 B.C.D. 1235 (Bankr.N.D.Ill.1983); *In Re Hartley,* 39 B.R. 281 (Bankr.N.D.Ohio 1984); *In Re Brentano's, Inc.,* 27 B.R. 90, 10 B.C.D. 157 (Bankr.S.D.N.Y.1983); *In Re Lahman Mfg. Co., Inc.,* 33 B.R. 681 (Bankr.D.S.D.1983); *In Re Brookfield Tennis, Inc.,* 29 B.R. 1 (Bankr.E.D.Wis.1982).

The jurisdictional provisions of section 1334 are limited by the permissive and mandatory abstention provisions found in 28 U.S.C. § 1334(c). Section 1334(c)(1) allows a district court to abstain from hearing a proceeding in the interests of justice and comity. Rustic is seeking to enjoin a creditor from taking action which would allegedly hinder its attempt to successfully

reorganize under chapter 11 of the United States Bankruptcy Code. It does not appear that the interests of justice and comity would be offended were this court to consider the issue.

Section 1334(c)(2) provides;

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding *if an action is commenced,* and can be timely adjudicated, in a State forum of appropriate jurisdiction....

(emphasis added). This provision is clearly inapplicable, in part because no action seeking to enjoin Marine from suing Rustic's guarantors has been commenced in state court.

■ This court has jurisdiction under section 1334, section 157(a) and the order of general reference dated July 12, 1984, to hear the instant case as one "related to cases arising under chapter 11." It remains to be determined, however, whether this court has the power to render a final decision in this matter.[2] 28 U.S.C. § 157(b)(1) provides,

Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

Section 157(c)(1) further provides,

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such a proceeding, the bankrupt-

cy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

To determine whether a final decision may be made, this · court must decide whether the instant proceeding is a "core proceeding" under section 157. Section 157(b)(2) lists examples of actions that constitute "core proceedings." Two of the examples may apply to the instant action, "(A) matters concerning the administration of the estate" and "(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship...," because the outcome of the state court guarantee action will affect the administration of Rustic's estate and the debtor-creditor relationship between Rustic and Marine. Subsections (A) and (O) are broad and would seemingly apply to a variety of proceedings. Since there are no hearing or committee reports, and little case law interpreting section 157 this court must look to the purposes behind enacting the provision and commentaries analyzing it, to aid in applying the term "core proceeding" to the instant case.

The purpose behind the core proceedings classification in the 1984 Bankruptcy Amendments is to distinguish between those matters in which bankruptcy judges can exercise broad discretion, *i.e.* in the adjudication of federally created rights, and those matters in which they can exercise only limited discretion, *i.e.* in the adjudication of state created rights. K. Lundin, *The 1984 Bankruptcy Amendments: Holes in the Matrix?,* 11 NORTON

---

**2.** *i.e.* Whether this court has the power to render a final decision on whether the injunction, an interlocutory order, should issue. *Cf. In Re Lion Capital Group,* 46 B.R. 850 (Bankr.S.D.N.Y. 1985), in which the court, after noting that an injunction "pendente lite" is interlocutory, held

that an order "insofar as it would enjoin the defendants from proceeding with their district court actions against affiliates of the debtors ... may, therefore, be entered without regard to whether the proceeding is core or non-core." 46 B.R. at 854.

BANKR. LAW ADVISER 1, 2 (1984). *See Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Rustic is requesting this court to enjoin Marine from enforcing its contract rights against the guarantors in state court. In one respect this involves state-created rights in that state law created the rights arising under the guarantees. However, this court is not determining the validity of these guaranties, it is determining only whether an injunction should issue against Marine. While the equitable right to an injunction is created by both federal and state law, U.S. CONST. art. III, § 2, WIS.CONST. art. VII, § 3, Rustic is asking this court to issue an injunction pursuant to its powers under 11 U.S.C. § 105(a). Therefore, the action involves rights arising under a federal statute which authorizes the exercise of equity founded primarily on the federal bankruptcy laws.

In *In Re Pierce, et al.*, BANKR.L.REP. (CCH) ¶ 70,153, at 86,182 (D.Colo.1984), the debtor sued the defendant in bankruptcy court for alleged breach of a leasing contract and sought injunctive relief. The bankruptcy judge issued the injunction. On appeal the district court held " 'core proceedings' do not encompass separate state law contract actions. A different construction of § 157 would require explicit rejection of the *Marathon* mandate." BANKR.L.REP (CCH) ¶ 170,153, at 86,182. The instant case does not involve a separate state law contract action. This court is not considering the rights arising under the guaranties; only the merits of issuing an injunction against a creditor in this chapter 11 case.

A determination that this action is not a core proceeding because it involves the opportunity to exercise state-created rights is superficial. Many of the examples of core proceedings listed in section 157(b), including (A) and (O), involve state-created rights. At least one commentator has attempted to explain this incongruity;

> [S]tate law rights arising in core bankruptcy proceedings are functionally equivalent to congressionally created rights, because Congress has the power to modify contractual obligations and other state-created rights through the bankruptcy clause. Indeed, the very purpose of bankruptcy is to modify the rights of the debtors and creditors, and the bankruptcy Code authorizes the Bankruptcy Court to aborogate or modify state-created rights in many ways.

T. Carlson, *Are the Jurisdictional Provisions of the Bankruptcy Amendments of 1984 Constitutional?*, 9 NORTON BANKR.LAW ADVISOR 1, 4 (1984) (cites omitted).[3] While the underlying guaranty action involves state-created contractual rights, a decision on whether to allow Marine to enforce its guarantees would be, under Carlson's analysis, a determination of congressional rights under the bankruptcy court's authority to modify the state created rights.

Carlson has suggested an alternative method to classify core from noncore proceedings; "determine whether the proceeding is a 'suit in'.... If the proceeding is not a 'suit in,' determine whether the right to relief is created by Title 11. If either of these tests are met, the proceeding is tentatively a core proceeding." T. Carlson, *Distinguishing Core from Non-Core Proceedings*, 1 NORTON BANKR.LAW AD. 1, 4 (1985). The term "suit in" is defined as all proceedings related to the distribution of assets to creditors, the discharge of the debtor, exemptions, and all phases of administration of the estate.[4] This definition is similar to the examples of core proceedings in section 157(b)(2)(A) and (O). Since it has been determined that jurisdiction

---

**3.** Carlson sets forth two additional arguments in favor of defining some state-created rights as congressional; first, bankruptcy adjudications, themselves, are matters of federal law, and second "state-created rights become in a sense federalized when adjudicated in bankruptcy proceedings integral to the restructuring of debtor-creditor rights," 9 NORTON BANKR.LAW ADVISOR at 4, citing *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966).

**4.** *Distinguishing* at 3.

over the instant suit exists under section 1334(b) because the state court guarantee action would have a "significant impact on the debtor's chances to reorganize," this proceeding is related to the administration of Rustic's chapter 11 estate, and is thus a "suit-in."[5] This is akin to the reasoning employed by the court in *Lion Capital Group, supra.* There the court stayed defendants from collecting capital contributions from limited partners of the debtor. The court explained:

> Since the stay of defendants from pursuing their actions in the district court is grounded on the harm to efficient administration of the debtor's estate that would likely occur absent a stay, the motion seeking such relief is undoubtedly a core proceeding within the meaning of the statute.

46 B.R. at 854–855 (footnote omitted).

█ It is clear from the analysis above that Rustic's suit is a core proceeding in which this court may render a final decision under section 157.[6] I will turn now to whether injunctive relief is appropriate. The bases for the bankruptcy court's injunctive power are 11 U.S.C. § 105(a) and 28 U.S.C. § 1481.[7] Courts acting in equity are vested with the power and authority to issue a wide range of injunctive relief. 2 *Collier on Bankruptcy* ¶ 105.02, 105–3. (15th ed. 1985).

The Bankruptcy Court for the Eastern District of Wisconsin impliedly recognized that it had the power to enjoin third parties from continuing actions against non-debtors. *In Re Brookfield Tennis, Inc.,* 29 B.R. 1 (Bankr.E.D.Wis.1982). In that case

a chapter 11 debtor filed a motion for an order enjoining the FDIC from continuing its suit in the United States District Court against officers of the debtor. The motion was denied as an improper manner of proceeding, but in commenting on the substantive issues raised Judge Clevert seems to have left open the possibility of a bankruptcy court enjoining actions against officers:

> Even if the debtor had properly invoked this court's jurisdiction, the FDIC has correctly argued that the debtor has failed to demonstrate that this court should invoke its powers under 11 U.S.C. § 105.
>
> Section 105 empowers Bankruptcy Courts to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of ... [Title 11].' The debtor was, therefore, statutorily obligated to demonstrate that an injunction was necessary or appropriate in this case.

29 B.R. at 2 (cites omitted). If the debtor had met the test, the court appears to say that an injunction could issue.

The traditional tests for determining whether a preliminary injunction should issue are: first, whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; second, whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; third, whether the plaintiff has at least a reasonable likelihood of success on the merits; and fourth, whether the granting of a preliminary injunction will

---

**5.** Carlson's test may be prone to cyclic reasoning. The definition of "suit-in" appears to be broad enough to include "all civil proceedings under title 11, or arising in or related to cases under title 11," section 1334(b). This may result in all proceedings under the jurisdiction of the district courts pursuant to section 1334(b), being "tentatively" labelled core proceedings under the first step of Carlson's test. This would defeat Congress' purpose behind distinguishing between core and noncore proceedings in section 157.

**6.** In *Holes in the Matrix, supra,* Lundin posits that through Congress' inadvertant wording of

section 157, bankruptcy courts are not granted the power to make final decisions in cases which are both core proceedings and "related to" cases under chapter 11. While this analysis is engrossing, it is unpersuasive when applied to the instant facts.

**7.** The Bankruptcy Amendments and Federal Judgeship Act of 1984 may have effectively nullified section 1481. If section 1481 is repealed, then section 105 is the sole authority for the issuance of injunctions by a bankruptcy court. 2 *Collier on Bankruptcy* ¶ 105.02, 105–3 (15th ed. 1985).

disserve the public interest. *Reinders Bros. v. Rain Bird Eastern Sales Corp.*, 627 F.2d 44, 48 (7th Cir.1980); *Fox Valley Harvestore, Inc. v. A.O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1907 (7th Cir.1976); *Wojciechowski v. Amoco Oil Co.*, 483 F.Supp. 109 (E.D.Wis.1980).

Rustic will be irreparably harmed if the preliminary injunction does not issue. Numerous courts have held that actions against corporate debtors' guarantors in state court can cause irreparable harm. *See Otero Mills, supra; Datair, supra; In Re Northlake Bldg. Partners*, 41 B.R. 231 (Bankr.N.D.Ill.1984); *Lahman, supra.* Rustic asserts that if Marine proceeds against the guarantors personally, they will file bankruptcies to protect their personal assets. The guarantors will have less incentive to work towards Rustic's rehabilitation, and will have to devote time and expense to the Marine litigation that they could have devoted to Rustic's reorganization. Additionally, two of the guarantors owe Rustic approximately $90,000. They are paying the debt monthly, but the debt is unsecured and would probably be discharged in the guarantors' individual proceedings. In the face of these assertions it is hard to sort the probable effects of the Marine suit from the guarantor's threats intended to discourage creditor action. For the most part I find the threat of disinterest and refusal to pay debts owed to the company less than compelling by themselves. However, taken as a whole it seems obvious that the suit on the guaranties would cause a major disruption to the debtor's progress toward reorganization.

More importantly, should Marine obtain judgment against the guarantors, who are the sole shareholders of Rustic, it could execute on their securities. Having the principal secured creditor as a principal shareholder of Rustic may not be in the best interests of the general creditors and the estate as a whole.[8]

Any harm caused Marine by this court's issuing the injunction is relatively minor in comparison with the harm caused to Rustic in the absence of an injunction. Marine has been found to be secured for its entire debt without accounting for the value of the guaranties, and Rustic is making payments of 2% per month on Marine's claim. Those payments are contended to provide adequate protection for Marine's interest. The court in *Otero Mills, supra,* found that payments made by a debtor similar to these, negated any harm to the creditor. If the injunction is issued Marine will only be inconvenienced in having to wait until Rustic drafts a plan, to collect on its debt.

Because of the nature of a chapter 11 case probability of debtor's ultimate success on the merits of its claim is hard to measure. "[S]uccess on the merits, may be said to refer to the probability of the debtors' having plans of reorganization confirmed in the near future which would provide for 100% repayment to the FDIC." *Larmar* 5 B.R. at 331. There is no comparable proposal for payment in this case, although Rustic asserts that it will be able to propose a plan in a timely manner which will provide for full payment of Marine's claim and meet with creditor approval.

Finally, I cannot see how public interest will be disserviced by the issuance of an injunction in the instant case. The court in *Otero Mills,* stated, "in the bankruptcy setting, the public interest lies in promoting successful reorganization." 7 C.B.C.2d at 1021. *See also, Northlake Bldg.,* 41 B.R. at 234 ("it is clear that the public interest will be best served if Debtor ... continues to work as they have toward the eventual goal of successful reorganization."); *cf. Mahaffey, supra.*

---

**8.** In *Brookfield Tennis* the court found that the debtor had not demonstrated that irreparable harm would result if the FDIC were allowed to continue its suit against the debtor's officers and shareholders. The court reasoned that since the debtor's plan provided that if the officers were to pay the FDIC they would stand in the FDIC's shoes as a secured claimant, the debtor would be in a better position to win creditor approval for its plan if it could deal with its officers rather than an unrelated third party. *Cf. Mahaffey, supra.*

Upon the foregoing which constitute my findings of fact and conclusions of law, it is hereby

ORDERED that judgment be entered enjoining Marine from pursuing the actions it has commenced in state courts of Wisconsin on the guaranties given by the officers of Rustic Manufacturing, Inc. the debtor herein until the jurisdiction of this court is terminated by the confirmation of a chapter 11 plan or until further order of this court.