**In the Matter of FEDERAL PRESS COMPANY, Debtor.**

**Bankruptcy No. 85–30932–RKR.**

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

Sept. 28, 1989.

Order Jan. 12, 1990.

See also, Bkrtcy., 116 B.R. 650.

James R. Byron and James H. Milstone, Elkhart, Ind., for debtor.

Emmett J. Gantz, Beverly Hills, Cal., and Rebecca Hoyt Fischer, Kramer, Butler, Simeri, Konopa & Laderer, South Bend, Ind., for claimant Dario Juarez.

RECOMMENDATIONS TO THE DISTRICT COURT CONCERNING MOTION FOR DETERMINATION OF TRIAL VENUE AND ORDER CONCERNING CLAIMANT DARIO JUAREZ' MOTION

ROBERT K. RODIBAUGH, Senior Bankruptcy Judge, N.D. Ind.

On November 4, 1988, Federal Press Company ("Federal Press"), the debtor herein, filed its Motion for Determination of Trial Venue.[1] On November 25, 1988, Dario Juarez filed his Cross Motion for Determination that Automatic Stay Provision is Inapplicable and for Relief Therefrom; and for Sanctions against Attorney James Byron and Federal Press Company Pursuant to Federal Rule of Civil Procedure Rule 11; Declaration of Jonathan Udell ("Motion"). The parties filed their stipulation of facts concerning their motions on January 18, 1989, and indicated that a hearing on the matter would not be necessary. The court entered its Order of January 23, 1989, directing that the filing of the parties' stipulation of facts and briefs setting forth their positions would constitute a full submission on these matters. On May 1, 1989, Juarez filed his motion to strike Federal Press' reply brief due to the fact that it did not comply with the stipulated briefing schedule. Federal Press filed its response to Juarez' motion to strike on May 5, 1989.

The court now grants Juarez' motion to strike Federal Press' reply brief, finds that the automatic stay is applicable to Juarez' state court action against Federal Press pursuant to 11 U.S.C. § 362(a)(3), and determines that the automatic stay should not be lifted at this time. The court further recommends to the district court that it grant Federal Press' motion for transfer of venue and denies Juarez' motion for sanctions.

*Background*

Federal Press filed its petition under Chapter 11 of the Bankruptcy Code on September 3, 1985. On April 13, 1988, Juarez filed his Complaint for Personal Injuries; Negligence; Strict Liability and Breach of Implied Warranty against Federal Press and various additional defendants in the Superior Court of the State of California for the County of Los Angeles seeking recovery for certain injuries he suffered while operating a punch press allegedly manufactured by Federal Press. Thereafter, Federal Press filed its Motion for Determination of Trial Venue and Juarez filed his Motion with this court.

With respect to their motions Federal Press and Juarez have stipulated to the following facts:

1. Federal Press Company filed a Voluntary Petition for Relief under the Bankruptcy Code ... on September 3, 1985. This Court entered an Order of Relief on the same day.

2. On or about May 26, 1987, Dario Juarez ~~claims to have~~ suffered an injury while employed by Interstate Stamping & Manufacturing Company, Inc. of Los Angeles, California as a press operator.

3. Dario Juarez claims that the press which caused his injury, a punch press bearing serial number 4–1089, was manufactured by Federal Press Company.

4. Federal Press placed a punch press bearing serial number 4–1089 into the stream of commerce on August 4, 1950.

5. On April 13, 1988, Dario Juarez filed a personal injury complaint against Federal Press Company in the Superior Court for the County of Los Angeles, California (Cause Number SCC 20280) seeking recovery on several tort theories.

---

1. The court construes this motion as a motion for a transfer of venue from the Superior Court of the State of California for the County of Los Angeles to this district.

6. At the present time, aside from Federal Press, plaintiff Juarez has served Interstate Stamp & Manufacturing Company, Inc. as a defendant in this matter. Interstate, Juarez's employer, is named under California Labor Code § 4558. Interstate is a California corporation. Additionally, Juarez is in the process of serving Pace–Setter, Inc., a California corporation, in place of John Doe 11 in his First Amended Complaint as a die manufacturer. Pace–Setter is thus named in causes of action for negligence and strict liability. Juarez first learned the identity of Pace–Setter on November 23, 1988. Additionally, Juarez is attempting to learn for purposes of service the location of PSC Corporation, which is named in the First Amended Complaint as a component part manufacturer and alleged to be liable in causes of action for negligence, strict liability, and breach of implied warranty. Juarez believes PSC Corporation to be a California corporation.

7. At the present time, there are approximately fifty-seven separate and individual tort claimants who have filed claims against Federal Press in the bankruptcy. Additionally, counsel for the Debtor is aware of some ten additional claimants who have pursued tort claims against the Federal Press Company. There may be additional claimant [sic] of whom the parties are not yet aware....

Stipulation of facts (January 18, 1989).

In its motion Federal Press indicates that Juarez' state court action against Federal Press should be tried in the District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 157(b)(5) since Federal Press has filed its petition in this district, since the district court is trying all other personal injury tort claims against Federal Press, since all personal injury tort claimants should be treated the same by having their claims tried in the same forum, and since holding the Juarez' trial in California would significantly burden Federal Press and possibly diminish the estate to the detriment of Federal Press' other creditors. Federal Press' Motion for Determination of Trial Venue at 2 (November 4, 1988). Federal Press submits that as it is a debtor under Chapter 11 of the Bankruptcy Code, the court has jurisdiction concerning the venue of Juarez' action in that following proper notice and a hearing the court may make recommendations to the district court pursuant to N.D.Ind. Local R. 45(b)(3). *Id.* at 3.

In his Motion filed November 25, 1988, Juarez asks the court to determine that the automatic stay provisions of 11 U.S.C. § 362(a)(1) do not apply to the litigation pending in California and to sanction Federal Press' counsel for proceeding with its Motion for Determination of Trial Venue. Specifically, Juarez asserts that the filing of Juarez' state court complaint and the injury upon which it is based occurred after Federal Press filed its petition thereby removing the complaint from the scope of the automatic stay. Juarez' Motion at 4 (November 25, 1988). Juarez contends that even though Federal Press' pre-petition actions may have resulted in his post-petition injury, the fact that the injury occurred post-petition makes the automatic stay inapplicable. Juarez argues that Congress did not intend for the automatic stay to apply to activities of the debtor which occur after filing of the petition and asserts that Federal Press and its creditors will not be harmed if the court determines the stay does not apply. *Id.* at 5.

Juarez asks the court to impose sanctions against Federal Press' counsel for filing its Motion for Determination of Trial Venue and for failing to withdraw the motion in spite of Juarez' insistence that the motion is without merit. *Id.* at 6–9. Juarez contends that the filing of the motion forced him to oppose the motion and to file his own Motion requesting relief from the stay. Juarez submits that Federal Press failed to answer Juarez' state court complaint with full knowledge that relevant statutory and case law required its response. Juarez asks the court to impose sanctions as a result of Federal Press and its counsel's actions in harassing Juarez and in causing the unnecessary delay of the state court action as well as to discourage Federal Press and its counsel from

taking similar actions against other possible claimants in the future. *Id.* at 8. Juarez states that his expenses in this matter total $2,760.00 in attorney's fees to date (24 hours @ the rate of $115.00 per hour). *Id.* at 9.

### Discussion and Decision

Initially, the court will address Juarez' motion to strike the reply brief of Federal Press and then will proceed to consider Federal Press and Juarez' respective motions concerning the automatic stay, trial venue, and sanctions.

### 1. *Motion to strike*

■ Invoking the briefing schedules which the parties executed and filed on December 19, 1988, and January 18, 1989, respectively, Juarez asks the court to strike Federal Press' reply brief. Juarez urges that the December 19, 1988, stipulation gave Federal Press 10 days from the receipt of Juarez' response brief to file its reply thereto. Juarez' brief in support of motion to strike at 1 (citing Stipulation of Fact Regarding Pretrial Conference (December 19, 1988) attached as Exhibit 1 to Juarez' brief). Subsequently, the parties executed the January 18, 1989, stipulation which gave Federal Press an extra 5 days' briefing time, bringing the total time to reply to Juarez' response brief to 15 days. Juarez' brief in support of motion to strike at 2 (citing Stipulation of Fact Between Debtor–in–Possession and Tort Claimant Dario Juarez Relating to Debtor's Motion for Determination of Trial Venue and Claimant Juarez's Motions for Determination that the Automatic Stay is Inapplicable; for Relief from Stay; and for Sanctions (January 18, 1989) attached as Exhibit 2 to Juarez' brief).

The court, though, finds that it need not go further than its Order of January 23, 1989, setting forth the briefing schedule in this matter, in ruling upon Juarez' motion to strike. The January 23, 1989, Order provides that "Debtor is given thirty days to file its brief and movant is then given thirty days to file an answer brief. Debtor will then have ten days to reply thereto."

Federal Press filed its initial brief on February 22, 1989. Without objection, Juarez filed its response brief on March 27, 1989, apparently one day after the time for filing briefs had passed. Federal Press, however, did not file its reply brief until April 17, 1989, 20 days after Juarez had filed his response brief. Inasmuch as Federal Press failed to file its reply brief within the time required by the court's Order of January 23, 1989, the court finds that the reply should be stricken from the record. The court further notes that Federal Press' reply also fails to comply with the briefing schedule to which the parties stipulated.

### 2. *Cross motion for determination that automatic stay does not apply*

■ Pursuant to 28 U.S.C. § 157(b)(2)(G) motions concerning the automatic stay are core proceedings which bankruptcy courts may hear and determine. 28 U.S.C. § 157(b)(2)(G) (Callaghan 1988). The court thus concludes that it has jurisdiction to determine whether the automatic stay is applicable to Juarez' state court action. With respect to the automatic stay 11 U.S.C. § 362(a) provides in relevant part:

(a) ... [A] petition ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

\* \* \* \* \* \*

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; ....

11 U.S.C. § 362(a)(1) and (3) (Callaghan 1988). The purpose of the automatic stay is to preserve the debtor's estate and provide for the orderly distribution of the debtor's assets "thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *Holt-*

*kamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 508 (7th Cir.1982) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 6296–97, and quoting *Litton Systems, Inc. v. Frigitemp Corp. (In re Frigitemp Corp.)*, 8 B.R. 284, 289 (S.D. N.Y.1981), citing *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977)).

 Juarez first argues, citing *Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.)*, 744 F.2d 332 (3rd Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), that his lawsuit is a post-petition claim to which the automatic stay does not apply. The court agrees with Juarez insofar as he submits that he does not assert a claim within the meaning of 11 U.S.C. § 362(a)(1). Juarez was not injured and had no contact with Federal Press until after Federal Press filed its petition. The court thus finds that he does not hold "a claim against the debtor that arose before the commencement of the case under this title ..." even though any act of Federal Press which may have led to his injury would have occurred pre-petition. As the Third Circuit noted in *In re M. Frenville Co., Inc.*, "[s]ection 362(a)(1) ... refers to 'proceedings' and 'claims' against, not acts done by, the debtor. Pre-petition acts by a debtor, by themselves, are not sufficient to cause the automatic stay to apply." 744 F.2d at 335. The court does not agree, however, with Juarez' contention that since his claim does not fall within the meaning of § 362(a)(1), the automatic stay is inapplicable to his state cause of action. Instead, the court finds the opposite to be true.

Juarez correctly points out that "[g]enerally, proceedings ... involving post-petition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors." Juarez' Motion at 5 (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 343–44 (1977), 1978 U.S.Code Cong. & Ad.News 6300). Section 362(a)(3), however, applies to "any act to obtain possession of property of the estate or of property from the estate ..." whether the act is pre-petition or post-petition. "Property" within the meaning of § 362(a)(3) may be defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.1986), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), (citing 11 U.S.C. § 541(a)(1)). This definition may include insurance contracts of the debtor as well as other valuable assets. *Id.*[2] In this case Juarez seeks to recover a post-petition claim from Federal Press which ultimately may be entitled to administrative priority. Such a claim, if successful, necessarily will involve property of Federal Press' estate. Juarez' attempt to assert the claim thus falls within the confines of 11 U.S.C. § 362(a)(3) and is subject to the automatic stay.

 Additional compelling factors convince the court that Juarez' action should be stayed even though Juarez' injury occurred post-petition.[3] As other courts have recognized, a court has the authority under other provisions of the Bankruptcy Code to take actions reasonably necessary to protect the interests of the debtor and its creditors. *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 203 (4th Cir.1988) (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d at 1002–03; *Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin United Corp. Litigation)*, 765 F.2d 343, 347–48 (2d Cir.

---

2. As the *Piccinin* court noted, a products liability insurance policy may be found to be "'the most important asset of [ ... the debtor's] estate.'" *Id.* (quoting *Johns–Manville Corp. v. The Asbestos Litigation Group (In re Johns Manville Corp.)*, 40 B.R. 219, 229 (S.D.N.Y.1984)).

3. At this point the court notes that the findings of the Third Circuit in *In re M. Frenville Co., Inc.*, 744 F.2d 332, may be distinguished from this case. In *In re M. Frenville Co., Inc.*, the court specifically found no compelling reason to stay the creditor's post-petition claim for indemnification or contribution since the claim could not be discharged. *Id.* at 338. The court disagrees with the Third Circuit's rationale only insofar as it may be inferred to mean that no compelling reason can ever be found to stay claims which arise post-petition.

1985); and 2 *Collier on Bankruptcy* (1987) ¶ 105.02 and referring to the equitable powers available under 11 U.S.C. § 105(a)). In the *Piccinin* case, the Fourth Circuit concluded that 11 U.S.C. § 105 grants the bankruptcy court the authority " 'to enjoin parties other than the bankrupt' from commencing or continuing litigation" when necessary to carry out the provisions of the Bankruptcy Code. 788 F.2d at 1002 (quoting *Otero Mills, Inc. v. Security Bank & Trust) (In re Otero Mills, Inc.*, 25 B.R. 1018, 1020 (D.N.M.1982)).[4] The *Piccinin* court further found that 28 U.S.C. § 1334 confers upon the bankruptcy court the "inherent power of courts under their general equity powers and in the efficient management of the dockets to grant relief" including granting a stay enjoining certain actions when necessary. *Id.* at 1003.

■ While the *Piccinin* case does not discuss the application of these powers to the situation at hand, i.e., a post-petition tort action against the debtor, the court finds the Fourth Circuit's discussion of the court's powers to be quite helpful both in defining the scope of the bankruptcy court's powers and identifying the sources of such powers. *See also In re UNR Industries, Inc.*, 725 F.2d 1111, 1119 (7th Cir.1984), in which the court intimates that a bankruptcy court's equitable powers may be broad enough to provide for future tort claims although those claims may not fall within the meaning of a "claim" under 11 U.S.C. § 101(4)(A).[5] The court finds that even if the stay provided by § 362(a) does not apply automatically to Juarez' litigation against Federal Press pursuant to § 362(a)(3), the particular facts and circumstances of this case merit extending the stay to Juarez' state court action for the time being.

■ The Bankruptcy Code commits the discretion to lift or modify the stay to the bankruptcy judge. *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir.1985) (citing *Holtkamp*, 669 F.2d at 507). A court is to look to the facts of a particular motion to determine whether lifting the automatic stay is appropriate under the circumstances. H.R.Rep No. 95–595, 95th Cong., 1st Sess. 343–44 (1977). Bankruptcy courts have modified or lifted the stay to permit continuance of a civil suit against the debtor when (1) no "great prejudice" to the bankruptcy estate would result; (2) the hardship to the plaintiff caused by the continuation of the stay outweighs the hardship caused to the debtor by modification of the stay; and (3) the plaintiff has a probability of prevailing on the merits of his case. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5836; *In re Pro Football Weekly, Inc.*, 60 B.R. 824, 826 (N.D.Ill. 1986); and generally *Holtkamp*, 669 F.2d at 508.

■ Reviewing the evidence before it, the court concludes that Juarez' motion for

---

**4.** The *Piccinin* court explains that several authorities have come to the conclusion that § 362 does not define the jurisdiction of the bankruptcy court concerning stays and injunctive relief but merely sets the perimeters of the automatic stay. 788 F.2d at 1002–03 (citing *In re Otero Mills, Inc.*, 25 B.R. at 1020; *In re Johns–Manville Corp.*, 26 B.R. 420, 425 (Bankr.S.D.N.Y.1983), quoting 2 *Collier on Bankruptcy* §§ 362.02 and 362.05 (15th ed. 1982); *Landmark Air Fund II v. Bancohio National Bank (In re Landmark Air Fund II)*, 19 B.R. 556, 559 (Bankr.N.D.Ohio 1982); and *In re Larmar Estates, Inc.*, 5 B.R. 328, 330–31 (Bankr.E.D.N.Y.1980)).

**5.** In *In re UNR Industries, Inc.*, the court addressed in dicta the difficult concern of providing for those future claimants who were exposed to asbestos before the debtor filed its petition but whose injury has not yet manifested itself. The court noted:

> [E]ven assuming that an unaccrued tort claim cannot be a "claim" within the meaning of 11 U.S.C. § 101(4)(A) ..., a bankruptcy court's equitable powers (on which see, e.g., *Pepper v. Litton*, 308 U.S. 295, 304 [60 S.Ct. 238, 244, 84 L.Ed. 281]. ... (1939); 1 Remington, A Treatise on the Bankruptcy Law of the United States § 22 (Henderson 5th ed. 1950)) just might be broad enough to enable the court to make provision for future asbestosis claims against the bankrupt when it approved the final plan of reorganization....

725 F.2d at 1119. The court discussed some of the pros and cons of attempting to provide for future unknown claimants ultimately concluding that as the district court did not decide the matter when it declined to appoint a representative for future asbestos claimants, the issue was premature. *Id.* at 1120.

a determination that the stay is inapplicable or in the alternative for relief from the automatic stay should be denied. The court recognizes that a stay of the litigation in California will cause some hardship to Juarez. Yet, the court believes that the hardship to Federal Press and its creditors, including Juarez, would be greater if the court modified the stay to permit Juarez to continue with his claim in California. The evidence indicates that approximately fifty-seven different tort claimants have filed claims against Federal Press. As many as ten additional claimants have pursued claims against Federal Press. Some of these claims are for injuries which, like Juarez', occurred post-petition. The record further indicates that Federal Press has filed its Complaint to Sell Assets Free and Clear of Liens and Encumbrances with Liens and Encumbrances to Attach to Proceeds of Sale in Adversary Proceeding No. 89–3051 and thus no longer contemplates having sufficient capital to reorganize its business. The court thus finds that Federal Press simply would be unable financially to litigate each tort claim in the forum where it arose.

The court further concludes that permitting Juarez and others like him to proceed with their claims in the forums where their claims arose would encourage the filing of similar requests for relief by plaintiffs of pending lawsuits involving similar injuries and would result in undue prejudice to Federal Press and its creditors. Perhaps more importantly, now that Federal Press contemplates liquidation, rather than reorganization, lifting the automatic stay might have a disastrous effect on the claimants' ability to recover from Federal Press' estate. Certainly, whether Federal Press chooses to propose a liquidating plan in Chapter 11 or elects to convert to a Chapter 7 proceeding, the funds available in the estate for both pre-petition and post-petition claimants as well as other creditors are limited. As soon as Federal Press ceases operations the flow of capital into the estate will stop. Upon the final distribution of funds from the estate, Federal Press will be no more. Hence, the claimants will be entitled to collect their distribution from the estate and nothing more regardless of the amount of any state court judgment they may obtain against Federal Press.

The court believes that allowing Federal Press' few remaining assets to be squandered defending lawsuits all over the country would be unfair to all parties involved. Federal Press would not be able to adequately defend all of the actions against it. Moreover, permitting post-petition claimants to pursue their state court actions inevitably would result in the "chaotic and uncontrolled scramble for the debtor's assets" which Congress sought to prevent by the automatic stay. The court believes the more equitable approach would be to stay all of the pending tort claims until they can be tried together in this district and to grant the claimants the opportunity to share in Federal Press' estate if they are able to prove their claims. While this approach no doubt will result in some delay and inconvenience to the claimants, it at least will insure that all of Federal Press' creditors are treated equally and fairly, will prevent the unnecessary draining of assets from Federal Press' estate, and will obviate the grievous possibility that a successful state court claimant might miss out completely on the distribution of assets from Federal Press' estate.

The court therefore finds that the automatic stay is applicable to Juarez' state cause of the action against Federal Press and declines to lift the stay at this time. The court further finds that even in the event Juarez' action technically is found to lie outside of the automatic stay provided by § 362, the equities of this case merit extending the stay to Juarez' action.

### 3. *Motion for Determination of Trial Venue*

■ Pursuant to 28 U.S.C. § 157(b)(2)(B), the liquidation or estimation of contingent or unliquidated personal injury tort claims against an estate is not a core proceeding for purposes of distribution in a case under title 11. 28 U.S.C. § 157(b)(2)(B) (Callaghan 1988). Section 157(b)(5), however, provides:

The district court shall order that personal injury tort ... claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5) (Callaghan 1988). N.D.Ind. Local R. 45(b)(3)(A)(iii) directs the bankruptcy judge to make recommendations to the district court concerning a motion for a transfer of venue of a personal injury tort claim. N.D.Ind. Local R. 45(b)(3)(A)(iii) (1987). The court in *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1011, noted that the purpose of § 157(b)(5) is "to centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'" (quoting 130 Cong.Rec. H 7492, June 29, 1984, *reprinted in* 1984 U.S.Code Cong. & Adm.News at 576, 579). While Federal Press has captioned its motion as a Motion for Determination of Trial Venue, the court construes the motion as a motion to transfer venue of Juarez' personal injury tort action from the Central District of California to this district.

In support of its Motion for Determination of Trial Venue Federal Press argues that Juarez' claim should be heard in this district in order to protect not only Federal Press' ability to reorganize but also the tort claimants as a whole including both those who hold pre-petition claims and those who hold post-petition claims.[6] Federal Press argues that trying the tort claims pending against Federal Press together in this district would reduce the expenses of the estate and prevent the possible preferential resolution of claims in various jurisdictions, and would permit Federal Press' creditors to share equally in Federal Press' estate. In addition, trying the tort claims together in this district would eliminate the possibility that Federal Press would be forced to default in the state court actions due to its inability to

defend the numerous lawsuits pending against it.

Juarez in turn submits that as state law will determine whether Federal Press is liable for his injuries, the action should remain in California. Juarez emphasizes that as his lawsuit involves various defendants in addition to Federal Press, the transfer of his cause of action against Federal Press to Indiana in effect would force him to try two different causes of action, one in Indiana against Federal Press and one in California against the remaining defendants. Juarez notes that permitting a transfer of his claim against Federal Press to Indiana also will in effect nullify any ruling terminating the automatic stay with respect to the California action.

Weighing the facts in this case, the court finds that the evidence favors transferring venue to Indiana. As the court noted previously, the economic situation of Federal Press is critical. Federal Press has indicated that it does not have the means to reorganize its business and plans to liquidate. Hence, the funds available for claimants such as Juarez are limited. Although requiring Juarez to litigate his claim in Indiana will be an inconvenience and extra expense to Juarez, the court believes that Federal Press and its creditors would suffer greater harm if the court permits Juarez to proceed with his action in California. Federal Press has minimal, if any, funds available with which to defend litigation outside of this district. In light of Federal Press' financial condition and the numerous causes of action pending against it, the court believes that transferring venue of Juarez' lawsuit against Federal Press to Indiana is the best course of action in that it will avoid unnecessarily draining the estate of funds that could be used to pay successful claimants and other creditors.

The court believes that the district court has the expertise and ability to apply the appropriate California law in trying Juarez' action. Furthermore, as the district court

---

**6.** As the court has noted, Federal Press has since filed its Complaint to Sell Assets Free and Clear of Liens and Encumbrances with Liens and Encumbrances to attach to proceeds of sale in

Adversary Proceeding No. 89–3051 and no longer contemplates having sufficient capital to reorganize its business.

will be handling numerous actions raising claims similar to those which Juarez asserts against Federal Press, it actually may be able to pinpoint the relevant issues and resolve the matters more promptly than the state court could. The court accordingly recommends that the district court transfer venue of Juarez' state court cause of action against Federal Press to this district.

### 4. *Motion for sanctions*

Finally, the court considers Juarez' motion for sanctions against Federal Press and its attorney. Juarez contends the court should grant its motion as he advised Federal Press that its Motion for Determination of Trial Venue was not well grounded in fact and that he would seek sanctions if Federal Press declined to withdraw the motion. Juarez submits that Federal Press had an obligation to respond to the state court proceedings against it and instead brought the litigation in this court to delay the matter. As is obvious from the earlier sections of this Order, the court disagrees. The court thus denies Juarez' motion finding that Federal Press' Motion for Determination of Trial Venue is meritorious and that Federal Press filed the motion in good faith without any ill intent or motive.

### *Conclusion*

WHEREFORE, the court grants Juarez' motion to strike Federal Press' reply brief and denies Juarez' cross motion for determination that the automatic stay does not apply to his state court action pending against Federal Press in the Superior Court of the State of California for the County of Los Angeles. The court further recommends that the district court grant Federal Press' motion to transfer venue of Juarez' state court action to this district and denies Juarez' request for sanctions. It is

SO ORDERED concerning Juarez' motion to strike, cross motion for determination that the automatic stay is inapplicable, and motion for sanctions; and

SO RECOMMENDED concerning Federal Press' motion to transfer venue.

### ORDER

Pursuant to Local Rule 45(b)(3)(A)(iii), the Bankruptcy Court issued its Recommendations to the District Court Concerning Motion for Determination of Trial Venue. After reviewing that Recommendation, this court hereby grants Federal Press Company's motion to transfer venue of Dario Juarez's state court action against Federal Press Company to this district. IT IS SO ORDERED.