In re SENTINEL ENERGY CONTROL SYSTEMS, INC. and Sentinel Telecommunications Systems, Inc., Debtors.

MPM WORLDWIDE CORPORATION, Plaintiff,

v.

SENTINEL TELECOMMUNICATIONS SYSTEMS, INC., Defendants.

MPM WORLDWIDE CORPORATION, Plaintiff,

v.

SENTINEL ENERGY CONTROL SYSTEMS, INC., Defendants.

SENTINEL ENERGY CONTROL SYSTEMS, INC. and Sentinel Telecommunications Systems, Inc., Plaintiff,

v.

MPM WORLDWIDE CORPORATION, Defendant.

Bankruptcy Nos. 83–0067–L, 83–0068–L. Adv. Nos. 83–0097–6, 83–0098–L and 83–0106–1.

United States Bankruptcy Court, D. Massachusetts.

Feb. 23, 1983.

Judith G. Warren, Raftery, Warren & Wardwell, Boston, Mass., for debtors.

Joseph Book, Boston, Mass., for MPM Worldwide Corp.

Thomas Hickey, Barron & Stadfeld, Boston, Mass., for the Chapter 11 Creditors' Committee.

Paula Bonnell, Boston, Mass., for United States Trustee.

## MEMORANDUM AND ORDERS

THOMAS W. LAWLESS, Chief Judge.

This matter is before the Court on various complaints seeking injunctive relief regarding a suit brought against the Chapter 11 debtors, Sentinel Energy Control Systems, Inc., and Sentinel Telecommunications, Inc., (hereinafter collectively "Sentinel") and Sentinel's non-debtor president, principle stockholder and sole employee, Dirk Duys ("Duys") by MPM Worldwide Corporation ("MPM") in the United States District Court of the Eastern District of Michigan, Southern Division. It appearing that the various complaints presented common issues of law and fact, on February 9, 1983 the Court consolidated the above-named adversary proceedings for both trial and decisional purposes and requested briefs on this Court's jurisdiction in this matter in light of the expiration of the stay of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* — U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). At the hearing on this matter on February 18, 1983, the following were adduced:

## I

Sentinel, by its president Duys, entered into a contract with MPM on August 11, 1982 (hereinafter the "Contract"). In the Contract, MPM hired the Debtors to engage in the research and development of certain energy related products, to manufacture both MPM current products and any products researched and developed by Sentinel and approved by MPM. Under the Contract, MPM was granted the exclusive rights to market, sell or trade all products manufactured by Sentinel for MPM. MPM was further granted all patent rights pertaining to or emanating from Sentinel's development of these products for MPM. Additionally, under the Contract, the Debtor corporations were to occupy a sensitive position of trust as a fiduciary to preserve and protect the integrity and secrecy of MPM's trade secrets, patents, patents applied for, processes, designs, customer lists, etc. The Contract further provided that it would be construed and enforced in accordance with the laws of the State of Michigan.

On January 11, 1983, MPM filed suit in Federal District Court in Michigan against both Debtor corporations and Dirk Duys (the "Michigan suit"). MPM asserts in the Michigan suit that Sentinel breached the Contract, breached warranties contained in the Contract, fraudulently induced MPM to enter into the Contract and that Sentinel and/or Duys converted, by misappropriation, the confidential information, trade secrets and property rights of MPM. MPM additionally sought the issuance of restraining orders against Sentinel and Duys' use, sale or manufacture of any and all tangible or intangible property rights asserted to belong to MPM under the Contract. On January 18, 1983, Sentinel filed for reorganization under Chapter 11 of the Bankruptcy Code. On February 4, 1983, MPM filed complaints in this Court seeking, *inter alia,* (i) the modification of the automatic stay of 11 U.S.C. § 362 in order to allow continuation of the Michigan suit against the Debtor corporations, (ii) the return of all property asserted to belong to MPM under the Contract, and (iii) the issuance of an injunction ordering and restraining Sentinel from di-

vulging, disclosing, selling or using any and all information as it pertains to MPM's equipment, products and property rights under the Contract. On February 7, 1983, Sentinel filed a complaint seeking an injunction temporarily and permanently enjoining MPM from prosecuting the Michigan action against Duys and Sentinel. Sentinel has also filed a counterclaim against MPM for breach of contract in the sum of $389,882.90. Sometime prior to the Court's hearing on this matter on February 18, 1983, MPM sought and obtained by default judgment a preliminary injunction in the Michigan action preventing Duys from seeking patents for, selling or marketing products which are asserted to be the property of MPM. A motion to show cause why Duys should not be held in contempt of court for allegedly violating that order is scheduled for February 24, 1983 in the Michigan District Court.

At the hearing on this matter on February 19, 1983, the United States Trustee moved for an order authorizing the appointment of an examiner in these proceedings to monitor Sentinel's operations pending an adjudication of contractual rights of MPM and Sentinel.

## II

At issue in this dispute is the ability of this Court to afford interim relief to these Debtors pending an adjudication of the contractual rights of the parties. Since the parties contractual relationship encompasses most, if not all, of the Debtors' assets and involves issues relating to the ownership of these assets, the ultimate resolution of this dispute will undoubtedly have a profound effect on Sentinel's ability to reorganize. Pending this resolution, however, the Court will attempt to fashion a remedy that preserves the status quo while conforming with this Court's jurisdiction in light of the Supreme Court's holding in *Northern Pipeline, supra.*

In *Northern Pipeline* the Supreme Court held that Section 241(a), insofar as it authorizes non-Article III bankruptcy judges to

hear certain proceedings, is unconstitutional. While the majority of the Supreme Court did not agree on what were unconstitutional proceedings under Section 241(a), both the plurality and concurring opinions seemed to agree that, since Section 241(a) was nonseverable, the entire jurisdictional grant of the Bankruptcy Reform Act of 1978 must be invalidated. Recognizing the disastrous effect that its ruling would have on the thousands of bankruptcy cases pending throughout the country, the Supreme Court stayed its judgment so that curative legislation could be enacted. In lieu of legislation, the district courts entered an Emergency Rule to fill the jurisdictional void on December 27, 1982. It is under this set of circumstances that bankruptcy courts now operate.

Faced with the obvious dichotomy between the Supreme Court's holding in *Marathon Pipeline* and the Emergency Rule adopted by the District Courts, several bankruptcy courts have wrestled with their ability to hear and adjudicate the cases currently pending before them. *See In re Schear Realty Investment Co., Inc.,* 25 B.R. 463, 9 B.C.D. 1210 (Bkrtcy.S.D.Ohio, W.D. 1982); *In re Jorges Carpet Mills Inc.,* 27 B.R. 333 (Bkrtcy.E.D.Tenn.1983); *In re Richardson,* 27 B.R. 407 (Bkrtcy. D.Utah, 1983); *In re Color Craft Press, Ltd.,* 27 B.R. 392 (Bkrtcy.D.Utah, 1983). I have reviewed with great interest the well-reasoned opinions cited above and agree that, in the wake of *Northern Pipeline,* the jurisdiction of this court is tenuous at best. At issue in this matter, however, is not the Debtors' ability to collect an isolated account receivable or preference in this Court, but the jurisdiction of this Court to afford these Debtors the opportunity to reorganize for the benefit of their creditors. As noted above, the Michigan suit involves issues relating to the ultimate ownership of assets currently in the possession of these Debtors and the rights of the Debtors' sole employee, an engineer Duys, to use and develop these assets pending the resolution of the contractual dispute.

■ Because I find this Court's inaction would cause irreparable harm to this estate and because I am unwilling to find that the Supreme Court in *Northern Pipeline* intended to transform this court into an abortion clinic for Chapter 11 debtors, I will exercise such jurisdiction as I find to be unimpaired by *Northern Pipeline.*

Section 1471(e) states:

The Bankruptcy Court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.

Section 1471(e) is unique in that it is the one statutory jurisdictional grant to the bankruptcy court that is not first filtered through the district court. Collier discerned this anomaly and notes that:

What subsections (a)–(c) of Section 1471 do for title 11 cases and civil proceedings, Section 1471(e) does for property; that is, it leaves no doubt as to the jurisdictional reach of the bankruptcy court over property. Interestingly this is the one type of jurisdiction as to which vesting is not first in the district courts. As such, it may be that subsection (e), which appeared in none of the proposed House or Senate bills, and was added at the House-Senate conference, was merely intended to make explicit that all property of the debtor, which becomes property of the estate, is in *custodia legis* of the bankruptcy court. I COLLIER ON BANKRUPTCY ¶ 3.01[g], at 3–55 (15th ed. 1982). *See also,* P. Murphy, CREDITORS' RIGHTS IN BANKRUPTCY ¶ 2.02, at 2–4 and n. I (1981).

Since § 1471(e) was not explicitly found unconstitutional in *Northern Pipeline* and 11 U.S.C. § 105 grants the bankruptcy court the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title", I will enter such orders as are necessary to preserve and protect the property of the estate that has been deposited with the Court.

■ In addition to Section 1471(e) bankruptcy courts, as courts of equity, have inherent jurisdiction exercisable independent of statute to ensure that assets within the courts' control are not dissipated. "Jurisdiction to administer the estate draws to itself, when once it has attached, an incidental or ancillary jurisdiction to give protection to the estate against waste or disintegration while frauds upon its integrity are in process of discovery. This power so obviously necessary to the attainment of the ends of justice has been exercised by the lower courts in a great variety of circumstances." *Steelman v. All Continent Co.,* 301 U.S. 278, 289, 57 S.Ct. 705, 709–710, 81 L.Ed. 1085 (1937); See also *Thompson v. Magnolia Co.,* 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940).

In view of this and the "malleable processes of courts of bankruptcy [which] give assurance of a remedy that can be moulded and adjusted to the needs of the occasion",[1] the Court will fashion such orders as are necessary under the circumstances of these cases.

■ However, the finding that bankruptcy courts have jurisdiction over the assets before them post-*Northern Pipeline* is in no way unlimited: This holding does not revive the "traditional summary jurisdiction" that was exercised by bankruptcy courts under the 1898 Act. Nor does this *in rem* jurisdiction enable the now bankruptcy courts to adjudicate matters such as are raised in the Michigan suit.

The plurality Court in *Northern Pipeline,* joined by the concurring Justices, did not find that the distinction between Article I judicial powers and Article III judicial powers was equivalent to the difference between summary and plenary jurisdiction. What the Supreme Court found unconstitutional in *Northern Pipeline* was the exercise of the judicial power of the United States in matters involving traditional common law causes of action by judges who are not afforded Article III protection. There is no

indication in *Northern Pipeline* that a bankruptcy court's possession of property cures this constitutional defect. To the extent that referees and bankruptcy judges under the former Act exercised such broad powers by virtue of possession, "those ... functions ... have never been explicitly endorsed by this Court." *Northern Pipeline, supra,* at n. 31.

The plurality Court, apparently joined by the concurring Justices, suggested a basis of constitutional bankruptcy jurisdiction that rests upon the distinction between disputes involving core bankruptcy "public rights" and disputes involving "private rights." While the Supreme Court and others have had difficulty in drawing the line of demarcation between the two, certainly the distinction is not based upon possession.

Upon consideration of the foregoing, the Court enters the following Orders with respect to the matters before it:

1) MPM's Complaint for Relief from Stay to allow continuation of the Michigan suit against the Debtor corporations.

Bankruptcy Courts have always had the authority to allow the quantum of a claim against the estate to be determined by another forum. Necessarily intertwined with the determination of the quantum of the claim in the case at bar, however, is the adjudication of asserted ownership interests in property of the estate. Due to the lack of jurisdiction to adjudicate such rights this Court must permit the Michigan court, or another court of competent jurisdiction, to do so. In order to provide the Debtors with an opportunity to effectuate a Plan of Reorganization before they are required to litigate this matter in Michigan, however, it is hereby

ORDERED:

■ That the automatic stay of 11 U.S.C. § 362 with respect to MPM's suit against Sentinel is continued in effect for 60 days or until further order of the Court.

---

**1.** *Steelman v. All Continent Co.,* 301 U.S. 278, 289, 57 S.Ct. 705, 709–710, 81 L.Ed. 1085 (1937); See also *Thompson v. Magnolia Co.,* 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940).

2) Sentinel's counterclaim asserted in this Court in the amount of $389,882.90 against MPM.

As this counterclaim should be heard in the forum where MPM's claim is being asserted, it is hereby

ORDERED:

That said counterclaim is dismissed.

3) Sentinel's authority to use the property that comprises this estate, including but not limited to the tangible and intangible property that is asserted to belong to MPM.

Essential to any rehabilitation prospects of these Debtors is the ability to use and develop the property that comprises these estates pending an adjudication by a court of competent jurisdiction of the matters raised in the Michigan suit. Since bankruptcy courts have authority to continue the debtor in possession's operations "upon such limitations or conditions as the court prescribes", 11 U.S.C. § 1107(a), I hereby authorize the United States Trustee to appoint a qualified Examiner pursuant to 11 U.S.C. § 151104 to ensure that the Debtors' operations do not prejudice MPM's asserted rights in property of this estate. In order to prevent disintegration and diminution of this estate, Sentinel is authorized to use, develop, manufacture and sell in the ordinary course of business property of the estate; provided that the Examiner finds that said activities do not prejudice MPM's asserted interests. *See Thompson v. Magnolia, supra,* at 482–83.

4) Dirk Duys' authority, as president and sole employee of Sentinel, to use the property that comprises this estate including, but not limited to, the tangible and intangible property that is asserted to belong to MPM.

Currently pending against Duys is a preliminary injunction obtained by MPM in the Michigan court after the Chapter 11 petition was filed enjoining Duys from manufacturing, using or selling any product asserted to belong to MPM during the pendency of the Michigan suit. As noted above, a motion to show cause why Duys should not be held in contempt for allegedly violating this order is scheduled for tomorrow, February 24, 1983 in the Michigan District Court.

I believe that the issuance of a contempt citation against Duys would cause irreparable harm to this bankruptcy estate. Duys is chief operating officer of Sentinel as well as the inventor, engineer and designer of its products. Duys is the Debtors' sole employee at the present time. Additionally, he is responsible for promoting the Debtors' products, submitting those reports required by the United States Trustee and meeting with the creditors' committee and its counsel. As such, a certificate of contempt would effectively terminate the reorganization proceeding.

Section 105(a) of the Bankruptcy Code empowers the bankruptcy court to enjoin a creditor's action against a non-debtor third party where the failure to do so "would affect the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through that third party." *In re Otero Mills, Inc.,* 21 B.R. 777, 778 (Bkrtcy.D.N.M.1982). Such injunctive relief should be granted only in limited circumstances and only where the debtor can show: "(1) Irreparable harm to the bankruptcy estate if the injunction does not issue; (2) Strong likelihood of success on the merits; and (3) No harm or minimal harm to the other party or parties." *Id.* at 778.

The irreparable harm that would result if an injunction does not issue against MPM has been demonstrated above. I find that the pending contempt action against Duys is an attempt to circumvent the automatic stay of Section 362 by seeking to do indirectly that which cannot be done directly. Duys signed the contract with MPM in his capacity as president of Sentinel and as such the real party-in-interest is Sentinel. In view of what I find to be MPM's purpose in seeking the contempt citation, the duties imposed on a Chapter 11 debtor in possession and on Duys as the sole employee, president and chief operating officer of these Debtors and the limited capacity in which Duys signed the underlying contract,

I find that there is a sufficient likelihood of success on the merits to justify the issuance of an injunction.

The Court has attempted to limit the potential of harm to MPM in view of the extraordinary circumstances under which the Court operates by appointing an Examiner to monitor the Debtors' activities as well as minimizing the stay regarding the continuation of the Michigan suit. Additionally, Duys and Sentinel will be enjoined from attempting to perfect any patents with respect to any property claimed by MPM. Based on these protections and the above recitations, it is hereby

ORDERED:

i) That Sentinel, Dirk Duys, their agents, servants, representatives, attorneys and assigns are hereby enjoined until further order of this Court from applying for or otherwise attempting to obtain patents in any property that is asserted to be property of MPM.

ii) That MPM, its agents, servants, representatives, attorneys and assigns are hereby enjoined until further Order of the Court from appearing, participating or otherwise seeking a contempt citation against Dirk Duys in the United States District Court of the Eastern District of Michigan, Southern Division or any other forum.

iii) That MPM, its agents, servants, representatives, attorneys and assigns are hereby enjoined for a period of 60 days or until further Order of this Court from appearing, participating or otherwise seeking relief against Duys in the underlying contractual dispute in the United States District Court, Eastern District of Michigan, Southern Division.