In re GATHERING RESTAURANT, INC., Debtor.

GATHERING RESTAURANT, INC., Plaintiff,

v.

FIRST NATIONAL BANK OF VALPARAISO, Defendant.

Bankruptcy No. 86–60483.
Adv. No. 86–6101.

United States Bankruptcy Court, N.D. Indiana, Hammond Division.

Sept. 16, 1986.

Daniel Freeland, Highland, Ind., for debtor.

Brian J. Hurley, Valparaiso, Ind., for First Nat. Bank.

## MEMORANDUM OPINION & ORDER [1]

KENT LINDQUIST, Chief Judge.

### I

### Statement of Proceedings

On July 24, 1986, the Debtor, the Gathering Restaurant Inc., (hereinafter: "Plaintiff") filed its Verified Complaint for a Permanent Injunction and Motion for Temporary Restraining Order versus First National Bank of Valparaiso (hereinafter: "Defendant") praying that Defendant be restrained and enjoined from pursuing a certain lawsuit versus Michael Rosenow (hereinafter: "guarantor"), a guarantor of the Plaintiff's indebtedness to the Defendant presently pending in the Porter Superior Court under Cause No. 86 PSC 695–B, entitled, "First National Bank of Valparaiso v. the Gathering Restaurant, Inc.", and Michael Rosenow guarantor on the grounds that the attempt by the Defendant

1. This Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed.R. Civ.P. 52 as made applicable by Bankruptcy Rule 9014 and 7052.

to collect said guaranty disrupts, inhibits and impairs the ability of the Plaintiff to reorganize by virtue of the fact that the only assets available to the Plaintiff are the assets of the guarantor, and that the Defendant has attempted to collect from the guarantor because the Defendant failed to properly perfect financing statements to secure assets of Plaintiff which prohibits Defendant from receiving adequate protection payments from the Plaintiff.

On July 24, 1986, the Court entered a temporary restraining order versus the Defendant, after due notice to Defendant and set this matter down for a hearing on whether a preliminary injunction should issue on August 5, 1986.

On August 5, 1986, said hearing was held and evidence submitted and arguments heard, the Court taking the matter under advisement.

## II

### Findings of Fact

The Plaintiff is a retail restaurant and bar operation which filed its petition for relief on March 28, 1986.

The Court takes judicial notice of the Debtor's schedule A–2 in which the Plaintiff has scheduled the Defendant as a secured creditor in the sum of $233,235.13 and which is the subject of the state suit versus the guarantor.

The Plaintiff's initial witness was John Rosenow (hereinafter: "Rosenow").

He testified that he was chief executive officer of the Plaintiff, effective August 1, 1986, and that the guarantor, who had been president of the Plaintiff resigned August 1, 1986, pursuant to a letter dated July 1, 1986 to Plaintiff's counsel (Movant's Exhibit No. 1).

Rosenow related that prior to August 1, 1986, he had been director of operations for the Plaintiff and three affiliated corporate entities who were also in the restaurant business. Those duties entailed purchasing, personnel and payroll.

Rosenow related that on August 4, 1986, the guarantor personally loaned $5,131.47 to the Plaintiff and its Merrillville, Indiana, affiliate to pay a bill from Sysco Foods for foodstuffs needed to operate those two restaurants. Rosenow did not have the exact breakdown as to the amount of the bill allocated to the Plaintiff, but surmised it was a greater portion of the bill based on the relative volume of the two operations. Admitted into evidence as Movant's Exhibit No. 1 was a cashiers check with the guarantor as remittor payable to Sysco Foods in the sum of $5,131.47 dated August 4, 1986.

Rosenow further stated that Sysco, who is the main purveyor of the Plaintiff's groceries for such items as meats, poultry, and dairy products, is selling to Plaintiff strictly on a C.O.D. basis approximately twice a week, and that if the Plaintiff suffers any cash shortfall which could not be met through emergency loans from the guarantor, the Plaintiff would not be able to effect delivery of the foodstuffs needed to be open for business.

Rosenow also related that from time to time, pre-petition, the guarantor had advanced monies to pay purveyors and that prior to the Plaintiff's petition, the Internal Revenue Service had seized the Plaintiff's liquor license and the guarantor personally advanced $20,000.00 to the Plaintiff for payment to the IRS to redeem the license. Rosenow added that the guarantor also advanced $15,000.00 of his own funds to pay Plaintiff's counsel the necessary retainer to handle this bankruptcy proceeding.

Rosenow added that he was unaware of any other source of financing purchases of foodstuffs and that in the event the Plaintiff incurred another cash shortfall and was unable to meet the C.O.D. requirements of its primary vendors, who are a requisite to the Debtor's day-to-day operations, the Debtors would in all probability be compelled to close their doors, thereby running a substantial risk that the total value of the Debtor as a going concern would be lost which might result in a successful plan not being confirmed.

Rosenow stated that since he just took over as chief executive officer of the Debtors, he did not know when a plan could be

filed or what the terms thereof would be, but that the general goal of the Debtors is to keep operating and sell the businesses as an on-going concern, and that a broker had been retained for that purpose.

Rosenow admitted he did not personally know if the suit by the Defendant versus the guarantor or a judgment against the guarantor thereon, would impair the ability of the guarantor to borrow monies to in turn be lent to the Debtor or to lend monies to the Plaintiff out of present assets, nor whether the time and expense, if any, that might be devoted by the guarantor to the defense of the lawsuit would impair the guarantor's ability to lend monies to the Debtor Plaintiff when needed.

Rosenow also admitted since he just took over the operations of the Plaintiff that he did not personally know whether all other sources of post-petition financing had been exhausted by the Debtor, and had not been personally involved in the financial aspects of the Plaintiff or in attempting to negotiate any loans.

Rosenow admitted he was not familiar with the Plaintiff's monthly operating reports filed with the Court and did not know at that time what the Plaintiff's exact cash flow position was or where monies had been expended; but based on his past experience with the daily gross receipts less known payroll and daily inventory requirements, the cash flow, if positive, was very thin.

Attorney Gordon Gouveia, an attorney for a major unsecured creditor of the Plaintiff, Gordon Food Services, Inc., who is chairman of the creditors' committee, stated he had reviewed the UCC financing statements of the Defendant filed versus the Plaintiff, and since they were filed within 90 days of the Plaintiff's petition, Gordon Food Services, Inc., has objected to any adequate protection payments being made by the Plaintiff to the Defendant as an alleged secured creditor.

The Court takes judicial notice of the Plaintiff's last two monthly operating statements filed with the Court.

The monthly operating statement beginning May 1, 1986 and ending May 31, 1986,

reflected a beginning cash balance of $4,960.00 and an ending cash balance of $28,195.87 with $50,252.44 expended for inventory and $33,366.88 for payroll and payroll taxes for a total of $83,619.32.

The monthly operating statement beginning June 1, 1986 and ending June 30, 1986, reflected a beginning cash balance of $10,-076.20 and ending cash balance of $6,311.20 with $37,727.39 in inventory purchases and $31,108.06 for payroll and payroll taxes for a total of $68,835.45.

### III

### Conclusions of Law and Discussion

No objections were made by the parties to the jurisdiction of this Court and the Court finds this is a core proceeding pursuant to 28 U.S.C. § 157.

The initial issue in this case is whether the Court has the jurisdiction to issue an injunction against a creditor of a non-debtor.

11 U.S.C. § 105 states as follows:

§ 105. Power of court.

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

The legislative history to 11 U.S.C. § 105 indicates that the limits on the powers of a Bankruptcy Judge were intended by Congress to be removed by the 1978 Code, and be consistent with the increased powers and jurisdiction of the new Court. The relevant congressional history to 11 U.S.C. § 105 is as follows:

Section 105 is derived from section 2a(15) of present law, with two changes. First, the limitations on the power of a bankruptcy judge (powers that were reserved to the district judge) are removed as inconsistent with the separation of the two courts and the increased powers and jurisdiction of the new court. *But see* H.R. 8200 § 405(a)(1) for limitations during the transition period....

Section 105 is similar in effect to the All Writs Statute, 28 U.S.C. § 1651 ... The section is repeated here for the sake

of continuity from current law and ease of reference, and to cover any powers traditionally exercised by a bankruptcy court that are not encompassed by the All Writs Statute.

This section is also an authorization, as required under 28 U.S.C. § 2283, for a court of the United States to stay the action of a state court. As such, *Toucey v. New York Life Insurance Company,* 314 U.S. 118 [62 S.Ct. 139, 86 L.Ed. 100] (1941), is overruled. [House Report No. 95–595, 95th Cong., 1st Sess. 316 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.]

Reprinted in 4 *Norton Bankruptcy Law and Practice,* Annotated Legislative History, § 105 (Callaghan & Co., 1983).

The case of *In re Otero Mills, Inc.* 21 B.R. 777 (Bankr.N.M.1982), *aff'd* 25 B.R. 1018 (D.N.M.1982) generally supports the position of the Plaintiffs. That case held that under certain circumstances a Bankruptcy Court, pursuant to 11 U.S.C. § 105, has jurisdiction to issue an injunction prohibiting a creditor from proceeding in a state court action against a non-debtor guarantor or co-obligor of a debtor's obligation if the enforcement of the same would fundamentally effect a Chapter 11 case or detrimentally influence and pressure the debtor through third parties. In that case it was held that the Bankruptcy Court did have such jurisdiction. *See In re Otero Mills, Inc., supra* at 1020, where the Court stated:

[I]t has been repeatedly held that this provision empowers the bankruptcy court to enjoin parties from proceeding in state court against parties other than the bankrupt. *In re Landmark Air Fund II,* 19 B.R. 556 (Bkrtcy. N.D.Ohio 1982); *In re Larmar Estates, Inc.,* 5 B.R. 328 (Bkrtcy. E.D.N.Y.1980); *see also A. Herzog & L. King,* 2 *Collier's Bankruptcy Practice Guide* ¶ 39.03[4] (1st ed. 1981).

Appellant cites only one case decided under the 1978 Bankruptcy Code which found that the bankruptcy court lacked the power to enjoin parties from pursuing actions against non-bankrupts in state court. *In re Aboussie Brothers Construction Co.,* 8 B.R. 302 (E.D. Mo.1981). In *Aboussie,* the court did not address § 105(a), but relied on cases decided under the old Bankruptcy Act to hold that there was no jurisdiction to enjoin parties from pursuing actions which did not involve the bankrupt directly. The pre–1978 Act confined jurisdiction to "the debtor and his property, wherever located." Act of June 22, 1938, ch. 575, § 1, 52 Stat. 906 (1938). Under the new Bankruptcy Code, the jurisdictional statute provides that the bankruptcy court shall have jurisdiction "of all civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C.A. § 1471 (Supp.1982).[2] This broader jurisdictional statute, combined with § 105(a), grants the bankruptcy court power to enjoin parties from proceeding in state court against non-bankrupts where the state proceeding is related to a case arising under Title 11.

This case, is the lead case for the proposition that the Bankruptcy Court may issue an injunction restraining creditor action versus non-debtors pursuant to 11 U.S.C. § 105. An additional basis for the injunctive power of the Court may also be 28 U.S.C. § 1481 which provides that a bankruptcy court shall have the powers of a court of equity and law.[3]

The facts in *Otero Mills, Inc.* upon which the Bankruptcy Court based its decision must be carefully analyzed. The assertion of the debtor-plaintiff was that the property in which the creditor sought to foreclose was property the guarantor intended to sell so that the proceeds might be contributed to the debtor for the payment of corporate

**2.** 28 U.S.C. § 1471 may have been repealed by Section 113 of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 343 (July 10, 1984).

**3.** 28 U.S.C. § 1481 may have also been repealed by Section 113 of the Bankruptcy Amendments

and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 343 (July 10, 1984). If Section 1481 is repealed then Section 105 is the sole authority for the issuance of injunction by the Bankruptcy Court. 2 *Colliers on Bankruptcy* ¶ 105.02, 10–3 (15th Ed.1986).

debts. The debtor also presented evidence to the effect that other creditors of the debtor were not likely to cooperate with the debtor if the creditor would be able to foreclose on those assets which were earmarked to pay the debtor's creditors.

The District Court in affirming the Bankruptcy Courts jurisdiction to issue such an injunction cited *Landmark Air Fund II,* 19 B.R. 556 (Bankr.N.D.Ohio 1982) and *In re Larmar Estates, Inc.,* 5 B.R. 328 (Bankr.E. D.N.Y.1980).

In *Landmark, supra,* the Court while upholding the power of the Court to issue such an injunction pursuant to 11 U.S.C. § 105, denied the request for the injunction where no bona fide reorganization was intended or feasible.

In *Larmar Estates, supra,* the Court also upheld the Court's power to issue such an injunction but denied such relief to the debtor where no irreparable harm was shown to the debtor by pursuing its guarantors, where such an injunction was not shown to be necessary and appropriate to carry out the Bankruptcy Code and there was no indication that the debtors were close to having a plan confirmed.

The following cases have also upheld such injunctive powers in the Bankruptcy Court: *In re Century Tools, Inc.,* 33 B.R. 606 (Bankr.S.D.Fla.1983); *In Re Keyco Inc.,* 49 B.R. 507 (Bankr.E.D.N.Y.1985); *In re Sentinel Energy Control Systems, Inc.,* 27 B.R. 795, 800 (Bankr.D.Mass.1983); *In re Lanham Mfg. Co., Inc.,* 33 B.R. 681, 682–83 (Bankr.D.S.D.1983); *Matter of Precision Colors, Inc.,* 36 B.R. 429, 431 (Bankr. S.D.Ohio 1984); *In Re Anje Jewelery Co., Inc.,* 47 B.R. 485 (Bankr.E.D.N.Y. 1983); *In the Matter of B.O.S.S. Partners I,* 37 B.R. 348 (Bankr.M.D.Fla.1984); *In re Northlake Bldg. Partners,* 41 B.R. 231 (Bankr.N.D.Ill.1984); *In Re Brentano's, Inc.,* 36 B.R. 90 (S.D.N.Y.1984); *Maheffery v. E–C–P of Arizona, Inc.,* 40 B.R. 469 (Bankr.D.Colo.1984) and *In re Lion Capital Group, Inc.,* 44 B.R. 690 (Bankr.S. D.N.Y.1984). As pointed out by the Court in *In re Lion Capital Group, Inc., supra* at 701:

There can be little doubt that the bankruptcy court, in its exercise of jurisdiction of referred cases under the Code and all adversary proceedings arising under, arising in, or related to such cases (28 U.S.C. § 157(a), 1334) has a far broader mandate than under the former Bankruptcy Act, a mandate only slightly less than that described in *Calloway v. Benton* [336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949) ] as not given under the Act. Moreover, § 1481 of title 28 and the Code itself provides authority for the exercise of that mandate. They invest the Bankruptcy Court with the "powers of a court of law and equity", able, as set forth in § 105 of the Code, to issue orders "necessary or appropriate to carry the provisions of [the Code]." These provisions strongly imply that the former jurisdictional constraints on staying parties before it from proceeding elsewhere no longer mark the limitations of its power. *E.g. Otero Mills, Inc. v. Security Bank Trust Co.,* 25 B.R. 1018, 1020 (D.N.M. 1982); *cf. In re Clawson Medical Center* [9 B.R. 644], 4 C.B.C.2d 73, 80 (Bankr.E. D.Mich.1981).

Thus, based upon the *Ratio Decedendi* of the foregoing cases this Court holds that it has the jurisdiction pursuant to 11 U.S.C. § 105 to issue an injunction, in the appropriate circumstances, to restrain a creditor from proceeding versus a non-debtor where the action of the creditor results in a direct and substantial irreparable harm to the debtor. Courts acting in equity are vested with the power and authority to issue a wide range of injunctive relief. 2 *Collier on Bankruptcy,* ¶ 105.02, 105–3 (15th Ed. 1986). The foregoing cases formed the basis of the issuance of the temporary restraining order.

It is further noted that no objection was raised by the defendant to the jurisdiction of this Court to issue such an order.

■ The Court also holds that this adversary proceeding is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) and that this Order is a final one as it relates to the Bankruptcy Court, although it may be interlocutory in the sense that an

Order granting a preliminary injunction would be "pendente lite". 28 U.S.C. § 157(b)(2) lists examples of "core proceedings" in which the Bankruptcy Court may enter a final order. Among the examples, are "(A) matters concerning the administration of the case and, "(O) other proceedings affecting liquidating of the assets of the estate or the adjustment of the debtor— creditor ... relationship...." These sections are very broad and it is clear that the outcome of the suit on the guaranty versus the guarantor by the defendant could effect the administration of the debtor's estate and the debtor—creditor relationship between the debtor and the defendant. It should be pointed out, however, that the court is *not* attempting to adjudicate the rights *inte se* on the guaranty agreement itself or determine the merits of the state action, but is only adjudicating the merits of issuing an injunction against a creditor in this Chapter 11 case. For these reasons, the Court holds that this adversary proceeding is a core proceeding and that the Court can issue a final order. *See, Rustic Mfg. Inc. v. Marine Bank Dane County,* 55 B.R. 25, 28–29 (Bankr.W.D.Wis.1985). *See also, In re HBG Service Center, Inc.,* 45 B.R. 668, 12 B.C.D. 740 (Bankr.E.D.N.Y. 1985); *In Re Lion Capital Group, Inc.,* 46 B.R. 850, 854–55 (Bankr.S.D.N.Y.1985).

Having resolved the jurisdictional and core versus non-core issues the Court must next determine based on the present status of the case, the evidence presented, and the nature of the claims asserted versus the guarantor by the Defendant, whether a preliminary injunction should issue versus the Defendant pursuant to 11 U.S.C. § 105 as being "necessary and appropriate to carry out the provisions of this title".

■ It must be noted that the Court must indulge in a presumption, until evidence is presented to the contrary, that a confirmed plan is being sought in good faith and that the debtor has reasonable prospect of proposing a feasible plan within a reasonable period of time. *See, In Re Heatron,* 6 B.R. 493, 496 (Bankr.W.D.Mo. 1980) where the Court stated:

The policy of the Code, as was that of the predecessor statutes, is to encourage reorganization if there is a reasonable possibility of success. *In re Colonial Realty Investment Co.,* 516 F.2d 154, 160 (1st Cir.1975); *In re Bermec Corporation,* 445 F.2d 367 (2nd Cir.1971). At the beginning of the reorganization process, the Court must work with less evidence than might be desirable and should resolve issues in favor of the reorganization, where the evidence is conflicting.

At the time of the hearing on the preliminary injunction the Plaintiff's case was in its infancy and had not been pending for a long enough period of time so that based on the record and the testimony the Court could ascertain with any reasonable degree of certainty whether the Plaintiff has a reasonable likelihood that it will be successful in having a plan confirmed within a reasonable period of time.

In deciding whether to grant a preliminary injunction to a plaintiff who has shown some likelihood of success, the Court must determine how likely that success is; the more likely that debtor is to obtain confirmation of a plan of reorganization, the less heavy the balance of harm need weigh in the plaintiff's favor, while the less likely the debtor is to get a plan confirmed, the more need that the balance weigh in the plaintiff's favor. *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380 (7th Cir.1984).

■ Where the balance of harms strongly favor the granting of a preliminary injunction, it is not necessary for the Court to decide whether the plaintiff is certain or even likely to prevail at trial; it is enough that substantial questions on the merits have been raised. *General Leaseways Inc. v. National Truck Leasing Ass'n,* 744 F.2d 588 (7th Cir.1984).

It was held in *Vogel v. American Society of Appraisers,* 744 F.2d 598 (7th Cir. 1984), that where the imbalance of harm is very great, the plaintiff is entitled to a preliminary injunction upon just the showing of a modest prospect of success on the merits but if the balance is closer the plaintiff must show a greater likelihood of suc-

cess in order to obtain the preliminary injunction.

■ In the Seventh Circuit, a plaintiff has the burden of proving *all* of the following in seeking an injunction:

1. That granting the requested injunction will serve, not disserve, the public interest;

2. That the threatened injury to the plaintiff outweighs the threatened harm an injunction may inflict on the defendant;

3. That the plaintiff has no adequate remedy at law and will be irreparably harmed if an injunction does not issue; and

4. That the plaintiff has a reasonable likelihood of success on the merits.

*Technical Publishing Co. v. Lebhar–Friedman, Inc.,* 729 F.2d 1136, 1138 (7th Cir.1984); *Dos Santos v. Columbus–Cuneo Cabrini Medical Center,* 684 F.2d 1346, 1349 (7th Cir.1982); *Reinders Bros. v. Rain Bird Eastern Sales Corp.,* 627 F.2d 44, 48 (7th Cir.1980).

■ In the context of a bankruptcy case such as the one before the Court, element one of the test, as set out above, i.e. the public interest, means the promoting of a successful reorganization which should be one of the paramount concerns of a bankruptcy court, *Otero Mills, Inc., supra,* 25 B.R. 1018 at 1021. And element four, i.e. reasonable likelihood of success on the merits, means the probability of a successful plan of reorganization. *In Re Lamar Estates,* 5 B.R. 328 at 331, *supra.*

■ This Court also is in agreement with the Court in *Matter of B.O.S.S. Partners I supra,* 37 B.R. at 351, where the Court pointed out that, "[I]n order to invoke the injunction remedy pursuant to § 105 of the Code, the burden is on the debtor (here the plaintiffs) to establish with persuasive evidence that the extraordinary remedy is warranted." *See also, In the Matter of Precision Colors, Inc.,* 36 B.R. 429 at 431, *supra,* where the Court stated:

Parenthetically, certain aspects of the bankruptcy court jurisdiction, if exercised, should be emphasized. The relief sought by the debtor in Possession is an

extraordinary remedy and requires strict proof of harm to the Chapter 11 reorganization with no concomitant harm to the Bank. In this sense, of furthering the reorganization process only, the Chapter 11 process must provide complete protection to the Bank and not serve merely to insulate per se the co-makers from the joint and several liability.

Speculative and conclusory allegations by the debtor are clearly insufficient. *See also, In Re Uiterwyk Corp.,* 36 B.R. 533, 534 (Bankr.M.D.Fla.1983).

No standard or guideline for defining "irreparable harm" to the bankruptcy estate has been developed by case law in the context of whether injunctive relief should be granted to the debtor as to a co-obligor of a debtor who has not sought relief under the Bankruptcy Code. *See generally,* "Case Study: Trio of Cases Illustrate Current Scope of Injunctive Relief Freezing Creditor Action Against Non-debtors",* Broken Bench Review, Vol. 4., No. 3, pp. 17–22 (March, 1985). Therefore, a discussion of the fact situations in some of the various cases cited above is warranted.

In *Otero Mills, supra,* the officer and guarantor of the debtor was going to contribute personal assets to the debtor to fund the plan of reorganization. The Court found irreparable harm to the debtor's estate because the officers' assets would not be available to fund the plan.

In *Century Machine Tools, Inc., supra,* the request for injunctive relief to enjoin Bank from proceeding versus the debtor's president and majority stockholders was denied where there was no showing that an injunction would restore the debtor's ability to borrow money.

In *Keyco, Inc., supra,* injunctive relief was denied where the debtor failed to show that its plan would be funded with property of the non-debtors in whose favor injunctive relief was sought.

In *Maheffery v. E.C–P Arizona, Inc., supra,* the Court denied the debtor's request for an injunction against a creditor who was pursuing the debtor's son as guarantor of debtor where the son had not and did not intend to contribute any of his

personal assets to the debtor and even though the son was a key employee of the debtor's business and the creditor's collection efforts could prevent the son from devoting his undivided attention to the debtor's business.

It is thus clear that something more than the mere fact one co-defendant has filed a Chapter 11 petition must be shown in order to warrant a stay of proceeding versus a non-debtor co-defendant. The touchstone necessary to justify the injunction is the clear showing by the plaintiff of a substantial and adverse impact on the debtor's ability to reorganize.

One additional factor to be determined by the Court as to whether irreparable harm may be incurred by the debtor is whether the action sought to be enjoined would so consume the time and energy and resources of the debtor's principals that it would substantially harm the debtor's reorganization effort. *Matter of Johns–Manville*, 26 B.R. 405, 419 (Bankr.S.D.N.Y. 1983) and *In re Anje Jewlery Co., Inc., supra* at 487.

It should also be noted that any payment to the defendant by the guarantor as guarantor of the plaintiff's debts to the defendant, would not increase the plaintiff's liabilities, as pursuant to the legal doctrine of subrogation and indemnification the guarantor would merely stand in the defendant's shoes and be able to assert its very same claim versus the plaintiffs which the guarantor in his own discretion could refrain from asserting and might put the plaintiff in a better position to win certain approval of their plans if it could deal with its officers, employees and stockholders, rather than unrelated third parties. *See,* 11 U.S.C. § 509(a); *Merchants National Bank and Trust Company v. Winston,* 129 Ind.App. 588, 159 N.E.2d 296 (1959); 14 I.L.E. Guaranty § 27 (Supp.1984).

It should further be noted that the non-debtor, i.e. the guarantor, can also gain the right to injunctive protection by filing his own bankruptcy proceedings. *See, In Re Venture Properties, Inc.,* 37 B.R. 175, 177 (Bankr.D.N.H.1984), where the Court stated:

It has been a cardinal principle of bankruptcy law from the beginning that its effects do not normally benefit those who have not themselves "come into" the bankruptcy court, with their liabilities and all their assets. *In re Eden Associates, supra; In re Aboussie Brothers Construction Co., supra; In re Dolton Lodge Trust No. 35188,* 22 B.R. 918, 7 CBC 2d 303 (N.D.Ill.1982) *Cf. Austin v. Unarco Industries, Inc.,* 705 F.2d 1 (1st Cir.1983). . . .

*In Re Venture Properties, Inc., supra,* in fact totally rejected the reasoning of *Otero Mills, Inc., supra,* and to that extent is contra to the Court's jurisdictional finding here. *See also, In re D.H. Lewis Co., Inc.,* 40 B.R. 531 (Bank.D.N.H.1984), where the Court upheld the right of the Bankruptcy Court to issue an injunction versus the IRS, but denied the injunction stating that the non-debtor corporate insiders could earn their own protection of the bankruptcy laws by filing their own Chapter 11.

And as was pointed out by the Court in *In Re Arrow Huss, Inc.,* 51 B.R. 853 (Bankr.D.Utah 1985):

The power to temporarily enjoin litigation against nondebtor principals of a corporate Chapter 11 debtor during the pendency of the reorganization case is a valid and useful exercise of Section 105. Used sparingly and judiciously, it protects the integrity of the reorganization process by restraining serious interference with the administration of the estate. The judicial discretion to enter a stay under Section 105, however, is susceptible to abuse. The burden is on the debtor to clearly establish the necessity for injunctive relief. This will ordinarily require convincing evidence of an adverse impact on the debtor's estate which seriously threatens the debtor's ability to formulate and carry out a plan of reorganization.

*Id.* at 859.

■ The Court finds that with the Plaintiffs case in its early stages there is not sufficient evidence for the Court to reach the conclusion that the Plaintiff in fact has reasonable prospects to reorganize within a

reasonable period of time. However, the Court at the early stages must make at least a rebuttable presumption that the Plaintiffs have made a good faith filing and are making a good faith effort to reorganize. Nor does the Court have any hard evidence that the guarantor shall *in futuro* continue to be an exclusive and indispensible source of emergency loans which will enable the Plaintiff to pay day-to-day purveyors, such as Sysco, Inc. who are absolutely essential to the Plaintiffs continuing existence as a going concern, and who according to Rosenow are all on a C.O.D. basis, as there has been no unconditional, binding commitment to fund such loans by the guarantor. In addition, there was no clear evidence that judgment versus the guarantor would impair his ability to make additional advances to the Plaintiff.

However, there is clear evidence of the guarantor's previous personal financial involvement with the Plaintiff that clearly proved to be of considerable value to the plaintiff, i.e. the monies lent to retain Plaintiff's counsel, the monies lent to reclaim the Plaintiff's liquor license, and the monies lent to pay Sysco, Inc. for foodstuffs.

These factors must be weighed against the possible harm that the Defendant may incur by being enjoined from proceeding on the guaranty agreement in the state court. An undue delay could result in the Defendant being materially prejudiced in asserting its bargained for rights, i.e. to look to the guarantor for personal payment of the Plaintiff's debts to the Defendant upon default by the Plaintiff. The Court's decision here thus involves an attempt to delicately balance the legitimate and competing interests of the Plaintiff in attempting to reorganize which is one of the paramount interests of this Court with the bargained-for contractual rights of the Defendant to proceed versus the guarantor on the Plaintiff's default in the state court.

The Court takes judicial notice that a similar action was filed by the Plaintiff versus Gordon Food Services, Inc. under adversary case no. 86–6041 in this same main case. This Court granted a preliminary injunction versus Gordon Dated June 6, 1986 enjoining it from proceeding versus the guarantor on its action in the state court on a certain guaranty agreement. In that case this Court stated as follows:

In the case at bar Rosenow has already liquidated some of his personal assets and used the proceeds thereof to resolve some of the Plaintiff's most pressing financial problems. It also appears that no institutional lender will provide post-petition financing to the Plaintiffs. Thus, Rosenow's personal assets may be of substantial importance to the Debtor in that Rosenow may be able to use the same to collateralize personal loans to him and in turn loan these monies to the Plaintiffs.

The Court thus finds that the Plaintiffs have shown at least a modest possibility of success on the merits and that the balance of harm weighs in favor of the Plaintiff, and that the Defendant should be and is hereby preliminarily enjoined from proceeding with its state court actions versus Rosenow. The Plaintiffs and Rosenow must however act in good faith and expediously to achieve the results they assert they wish to obtain by the issuance of this preliminary injunction, i.e. mere speculation or conjecture that Rosenow might financially assist the Plaintiffs will not suffice to keep this preliminary injunction in place indefinitely. Prompt action and tangible results in keeping with the status and progress of the Plaintiff's cases is required. Also, inasmuch as the Defendant is precluded from diligently asserting its legal rights on the guaranties, it should not also be penalized by being left in a position where all of the Rosenow assets are transferred or encumbered or other creditors are placed in a prior position. The purpose of this preliminary injunction is to preserve the *status quo* and this should also include the *status quo* as to Rosenow's personal assets and affairs. Thus, the Court is granting the preliminary injunction prayed for by the Plaintiffs, but only on the following terms and only if the Plaintiffs and Rosenow comply with the following conditions:

**1002**

1. The Plaintiffs shall file their plans within 120 days from the date of the filing of their petitions and failing to do so, the Defendants may move to have the Plaintiff's complaint for Permanent Injunction set down for a bench trial which the Court shall hear promptly and in no event more than 30 days after said Motion is filed by the Defendant.

2. In the event the Plaintiffs file their plans within 120 days from the date of their petitions, this preliminary injunction shall remain in effect for 180 days from the date of the filing of their petitions, and if the Plaintiff's plans are not confirmed within 180 days from the date of the filing of their petitions, the Defendant may move to have the Plaintiff's complaint for permanent injunction set down for bench trial which the Court shall hear promptly; and in no event more than 30 days after said Motion is filed by the Defendant.

3. That Rosenow move to intervene as a co-plaintiff in all three adversaries and submit himself to the jurisdiction of this Court within ten (10) days from the date of the entry of this Order.

4. That Rosenow file with this Court, a written notice of any sale, assignment, encumberance, or other disposition or transfer of any of his personal property now owned or hereafter acquired, whether said property interest be legal or equitable, real, personal, or mixed, tangible or untangible, ten (10) days prior to any such transaction, with an accompanying certificate of service showing service of said notice on Defendant's counsel.

5. That Rosenow serve on the Plaintiff within twenty one (21) days from the date of entry of this Order a verified financial statement setting out all his assets and liabilities and financial statement to reflect Rosenow's financial condition on the date of the verification.

6. That in the event any person or entity whatsoever, files suit versus Rosenow for any reason whatsoever, files a nonconsenual lien versus any of the property of Rosenow for any reason whatsoever, or any taxing agency files a notice of assessment, or like document, assessing any tax liability whatsoever, Rosenow shall within seven (7) days thereafter so notify the court in writing and serve a copy thereof on Defendant's counsel. In the event such a suit or lien is filed, the Defendant may move to have Plaintiff's complaint for permanent injunction set down promptly for bench trial and the court shall hear the same promptly, and in no event more than 30 days after said Motion is filed by the Defendant.

7. In the event that Rosenow does not perform as ordered herein, the Defendant may so inform the Court by affidavit, and the Court reserves the right to dissolve the preliminary injunction without further notice and hearing after giving the Plaintiff and Rosenow five (5) days notice of an opportunity to request a hearing.

*Id.* at pp. 14–16.

Over three months has elapsed since the above order was entered and the Plaintiff has not filed a plan or disclosure statement, nor has Gordon moved the Court set that suit down for trial as to whether a permanent injunction should issue. The guarantor has filed no subsequent notice with the Court pursuant to the above order that any other suit or that any nonconsensual lien has been filed against him or that he intends to transfer or encumber any of his assets. The only other known suit versus the guarantor by Gordon is thus still stayed, and Gordon cannot at this point achieve a position superior to that of the Defendant in collecting its claim out of the guarantors assets. There is no present reason to believe that the Defendant is losing the "race to the Court house".

Thus, at this time, the Court finds that the Plaintiff should be given an opportunity to call upon the guarantor for additional loans, at least in the short term, without the prospects of a judgment being entered and post-judgment proceedings being insti-

tuted which might inhibit the guarantor's ability to resort to his personal assets to aid the Plaintiff's reorganization efforts. In balancing the harms, the potential harm to the Plaintiff by losing this possible source of funds outweighs the harm that might inure to the Defendant by a short delay in exercising its rights pursuant to the guaranty in the state court.

Injunctive relief is designed to permit the Court to mold the decree to the necessities of the particular case. *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975). Accordingly, the Court's discretionary power to grant an injunction includes the authority to impose any terms as a condition to granting relief. *Meyers v. Block*, 120 U.S. 206, 7 S.Ct. 525, 30 L.Ed. 642 (1887). The Courts have a duty to condition injunctive relief for the purpose of protecting all, including the public, whose interests may be effected by the injunction. *Inland Steel Co. v. United States*, 306 U.S. 153, 59 S.Ct. 415, 83 L.Ed. 557 (1939). One of the primary reasons for granting a preliminary injunction is to preserve the status quo. In this context, the status quo refers to the last uncontested status which proceeded the pending controversy. *Canal Authority of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974).

Therefore, the Court does hereby grant the Plaintiff's prayer for a preliminary injunction on the following terms and only if the Plaintiff and the guarantor comply with the following conditions.

1. That the guarantor move to intervene as a co-plaintiff in this adversary and submit himself to the jurisdiction of this Court within ten (10) days from the date of the entry of this Order.

2. That the guarantor file with this Court, a written notice of any sale, assignment, encumberance, or other disposition or transfer of any of his personal property now owned or hereafter acquired, whether said property interest be legal or equitable, real, personal, or mixed, tangible or untangible, ten (10) days prior to any such transaction, with an accompanying certificate of service

showing service of said notice on Defendant's counsel.

3. That the guarantor serve on the Plaintiff within twenty one (21) days from the date of entry of this Order a verified financial statement setting out all his assets and liabilities and financial statement to reflect guarantor's financial condition on the date of the verification.

4. That in the event any person or entity whatsoever, hereafter files suit versus guarantor for any reason whatsoever, files a non-consenual lien versus any of the property of guarantor for any reason whatsoever, any taxing agency files a notice of assessment, or like document, assessing any tax liability whatsoever, or Gordons moves to have the Plaintiff's complaint for permanent injunction set down for trial under adversary 86–6041, *supra*, guarantor shall within seven (7) days thereafter so notify the court in writing and serve a copy thereof on Defendant's counsel. In the event such a suit, lien or motion is filed, the Defendant may move to have Plaintiff's complaint for permanent injunction set down promptly for bench trial and the court shall hear the same promptly, and in no event more than 30 days after said Motion is filed by the Defendant.

5. The Plaintiff shall, within ten (10) days of this Order file with the Court, and serve a copy on the Defendant, a written report as to the date, amount, and purpose of any loans made to or on behalf of the Plaintiff by the guarantor since the evidentiary hearing held on August 5, 1986, and report in the same fashion as to any such loan or advance made subsequent thereto.

6. In the event that the guarantor does not perform as ordered herein, the Defendant may so inform the Court by affidavit, and the Court reserves the right to dissolve the preliminary injunction without further notice and hearing after giving the Plaintiff and "guarantor" five (5) days notice of an opportunity to request a hearing.

Notwithstanding the foregoing, the Defendant is hereby given leave to file its motion to have the Plaintiff's complaint for

**1004**

permanent injunction set down for trial when sixty (60) days from the date of the entry of this order has elapsed.

It is therefore,

ORDERED, ADJUDGED, AND DE-CREED that the Defendant, its agents, servants, employees and attorneys and all those acting for and on behalf of the Defendant are preliminary enjoined from proceeding versus the guarantor under Porter Superior Court Cause No. 86–PSC 695–B.